**In re John W. WHATLEY and Ruby L. Whatley.**

**In re WHATLEY FARMS, INC.**

**Bankruptcy Nos. E84–40073, E84–40106.**

United States Bankruptcy Court,
N.D. Mississippi.

April 11, 1985.

Craig M. Geno, Bennett, Lotterhos, Sulser and Geno, Jackson, Miss., for John W. Whatley, Ruby L. Whatley, and Whatley Farms, Inc.

John W. Garrard, Montgomery, Varnado, Garrard, and Trotter, Belzoni, Miss., for Guaranty Bank and Trust Co.

Patricia D. Rogers, Asst. U.S. Atty., Oxford, Miss., for U.S. Small Business Admin.

OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

CAME ON for consideration the priority of liens dispute between the United States Small Business Administration, hereinafter referred to as SBA, and Guaranty Bank and Trust Company, hereinafter referred to as Guaranty Bank; all parties being represented by their respective attorneys of record; on a factual stipulation approved by all parties; on proof in Open Court; and the Court having heard and considered same, finds as follows, to-wit:

## I.

This case involves a priority of liens dispute between two creditors of the debtors, Whatley Farms, Inc., John W. Whatley and wife, Ruby L. Whatley. Although this proceeding would be denominated as a "non-core" proceeding as defined in 28 U.S.C. § 157(c), the two creditors and all of the debtors have consented to trial before this Court, as well as, that this Court might enter a final order following said trial appealable at the election of any of the parties pursuant to 28 U.S.C. § 158.

## FACTUAL BACKGROUND

On October 28, 1975, the Secretary of State of the State of Mississippi issued a certificate of incorporation to the corporate debtor, Whatley Farms, Inc., with the individual debtors, John W. Whatley and Ruby G. Whatley, listed as incorporators. The certificate of incorporation and its proof of publication were filed in the Office of the Chancery Clerk, Humphreys County, Mississippi, on November 17, 1975, and recorded in Book of Charters No. 5 at page 293. The corporate minute book of Whatley Farms, Inc., contains the certificate of incorporation, but no minutes of organizational meetings, i.e., a meeting of incorporators or the initial meeting of the original board of directors, as well as, contains no *signed* corporate minutes for any meetings of the board of directors or of the shareholders. However, there are *unsigned* minutes for a special board of directors meeting dated April 9, 1976, and a resolution of the stockholders and directors dated May 24, 1984. The only executed corporate document, other than the certificate of incorporation, was a resolution in the possession of SBA, dated November 11, 1981, authorizing the corporation to make application to SBA for a loan not to exceed $158,600.00, specifically including the authority to mortgage or pledge the assets of the corporation as security for the loan. The corporate stock of Whatley Farms, Inc., has never been issued and all the printed stock certificates found in the corporate record book remain in blank.

The initial balance sheet which was introduced into evidence reflected a note receivable as a corporate asset due to the corporation from Mr. and Mrs. Whatley in the sum of $52,588.94. On this same balance sheet, a value of the corporate stock was arbitrarily designated at $10,000.00. The corporate accountant designated a value for the farm equipment when creating this balance sheet and offset this value with the amount of the indebtednesses owed against the equipment. The stock valuation and the amount of the note receivable due from the Whatleys were then "plugged" to balance the assets against the liabilities and stockholders equity. § 79–3–111, Mississippi Code of 1972, as amended, was totally disregarded which requires the payment of the value of at least $1000.00, for the issuance of corporate stock prior to the transaction of any business. The preparation of the initial balance sheet amounted to no more than an artificial accounting transaction with no actual cash or value infusion being made by the Whatleys. The fact that a note receivable was established strictly violates the provisions of § 79–3–89, Mississippi Code of 1972, as amended, which prohibits loans being made by a corporation to its officers or directors.

There is no evidence in writing of a bill of sale, deed, or other instrument, except for book entries made by the corporate accountant in the depreciation schedules established for the corporation, that any personal property of any kind was ever lawfully transferred into the corporation by John W. Whatley, Ruby G. Whatley, or any other person, firm, or legal entity.

After incorporation, Whatley Farms, Inc., opened a corporate checking account at the Cleveland State Bank, Cleveland, Mississippi, and utilized this account regularly conducting business activities, including specifically the payment of several obligations to Guaranty Bank and Trust Company. However, as mentioned previously, there was no evidence introduced reflecting that this checking account was ever authorized through the corporate minutes or by a corporate resolution. For all practical purposes, the corporation was a vehicle uti-

lized by the corporate accountant for income tax purposes only. The items of machinery and equipment were depreciated annually on the corporate tax return and considered, somewhat unwittingly in a legal context, by the accountant as corporate assets from the inception of the corporation until the present.

After the issuance of the certificate of incorporation on October 28, 1975, John W. Whatley continued to purchase farm equipment in his personal name and financed these purchases through loans made by Guaranty Bank and Trust Company. These loans were secured by the execution of security agreements and UCC–1 financing statements, encumbering the farm equipment, in favor of Guaranty Bank, several of which are identified hereinbelow:

| FILED | EQUIPMENT | SECURED PARTY | EXECUTED BY |
|---|---|---|---|
| 1–03–76 | 699–JD Cottonpicker | Guaranty Bank | John W. Whatley |
| 1–22–76 | 1–4166 Int. Tractor | Guaranty Bank | John W. Whatley |
| 5–24–77 | 310 Steiger Tractor disc | Guaranty Bank | John W. Whatley |
| 7–22–77 | 1–D–6 Caterpillar dozer | Guaranty Bank | John W. Whatley |
| 9–11–78 | M–F 760 Rice Combine | Indianola Tractor Co. | John W. Whatley, d/b/a Whatley Farms |
| 1–17–79 | 1–MF Rice Combine | Guaranty Bank | John W. Whatley |
| 1–19–79 | 1–JD Tractor, 2 dirt buckets | Guaranty Bank | John W. Whatley d/b/a Whatley Farms |
| 3–07–79 | 2 Reynolds scrappers, drawbar | Guaranty Bank | John W. Whatley |
| 5–31–79 | 1973 Sunshine Mobile Home | Guaranty Bank | John W. Whatley |
| 7–19–79 | 1–JD Tractor & 2 Reynolds dirt buckets | Guaranty Bank | John W. Whatley, d/b/a Whatley Farms |
| 7–08–80 | 2–14 yds. Reynolds dirt bucket, New PTA325 Panther Steiger tractor, 1–4840 JD Tractor | Guaranty Bank | John W. Whatley, d/b/a Whatley Farms |
| 5–23–83 | All equipment | Guaranty Bank | John W. Whatley |

At the hearing, the representative of Guaranty Bank acknowledged that all of the loans made to the Whatleys prior to May 23, 1983, had been paid in full and the liens satisfied. Therefore, for purposes of this proceeding, the lien in dispute is that one created on May 23, 1983, when the loan was made by Guaranty Bank to the individual debtor, John W. Whatley, secured by all of the farm equipment. The date of this lien is clearly subsequent to the date of the lien created in favor of SBA which is discussed immediately hereinbelow.

In 1981, the Whatleys relocated their farming business, including their machinery and equipment, from Humphreys County, which is located in the western portion of Mississippi, across the State to Kemper County, which is located along Mississippi's eastern boundary. On November 11, 1981, Whatley Farms, Inc., entered into a loan transaction with SBA and executed a security agreement and UCC–1 financing statement which encumbered all machinery and equipment, excluding automotive, now owned or hereafter acquired, including but not limited to certain items of property described on a list appended to the UCC–1 financing statement. As mentioned hereinabove, John W. Whatley, acting individually, executed a UCC–1 financing statement

in favor of Guaranty Bank, recorded on May 23, 1983, which purported to encumber all equipment used in his row crop or catfish operations, including but not limited to equipment described on an exhibit appended thereto. Although both financing statements purported to cover "all equipment", the following items are specifically encumbered by the financing statement in favor of SBA, as well as, the financing statement in favor of Guaranty Bank, to-wit:

One (1) 1974 IH 1466 Tractor, S/N 25265

One (1) 1971 IH 1466 Tractor, S/N 9345

One (1) 1967 IH 1206 Tractor, S/N 14913

One (1) 1974 JD 830 Tractor, S/N 110605

One (1) 1969 Gleaner F. Combine, S/N 7543

One (1) 1976 Case 580 Backhoe

One (1) 1973 JD 4630 Tractor, S/N 002321

One (1) 1967 IH 806 Tractor, S/N 42043

One (1) 1973 D-6 Caterpillar, S/N 10K6771

On April 23, 1984, John W. Whatley and Ruby L. Whatley filed their voluntary Chapter 11 petition with this Court, and on June 5, 1984, Whatley Farms, Inc., filed its voluntary Chapter 11 petition.

## DISCUSSION OF THE ISSUES

As to the resolution of the priority of liens dispute, the Court must first reach a decision as to which person or entity lawfully owned the machinery and equipment, and as such had the authority to pledge these assets as collateral for a loan. At this point, it is not the function of this Court to determine whether the individual debtor, John W. Whatley, who is also a personal guarantor of the SBA loan, intentionally permitted this machinery and equipment to be pledged to two separate lenders. The Court is only called upon to resolve the priority dispute between SBA and Guaranty Bank and Trust Company. Since there was no requirement at the time that these loans were negotiated that a duplicate filing of the UCC-1 financing statements be made with the Secretary of State of the State of Mississippi, there is no question that both of these creditors acted

in good faith. The factual circumstances existing in this case, including specifically the Debtors' relocation, the existence of more than one legal entity, and the mobility of the equipment, contributed to these two creditors not being aware of the filing of duplicate liens. Rendering a decision in this case is extremely difficult in view of the fact that the factual circumstances present an extremely close question. The legal position of each of the respective creditors has both pluses and minuses, and neither position heavily outweighs the other. Therefore, this dispute must be resolved based on a preponderance of the evidence, i.e., in which creditor's favor do the scales of justice tip, even if only slightly.

The testimony of Mr. Whatley must be given careful consideration in the resolution of this dispute. It is important to remember that he is individually liable on each of the two loans. Mr. Whatley stated unequivocally that he thought that the machinery and equipment belonged to him rather than to the corporation and that it was his intention to grant an exclusive lien to Guaranty Bank when he entered into the loan transaction in May, 1983. He also advised that a portion of the proceeds of the Guaranty Bank loan were utilized to satisfy an existing indebtedness to Merchants and Farmers Bank, Scooba, Mississippi, (Kemper County) which in his opinion held a first lien on the equipment prior to the Guaranty Bank loan. Mr. Whatley confirmed that the items of equipment were purchased by him in an individual capacity, as well as, that he had executed no bill of sale or other document conveying title to the equipment to Whatley Farms, Inc. Mr. Whatley's testimony was largely corroborated through the testimony of his wife, as well as, through the testimony of Bruce Dunlap, the representative of Guaranty Bank, who indicated that he thought that his lending institution was receiving a first lien on the equipment when the May, 1983, loan was consummated. Dunlap also advised that he was totally unaware of the

existence cf Whatley Farms, Inc., until the filing of the bankruptcy cases.

The Court is well aware that the lien documents in favor of SBA were executed and recorded prior to the lien documents in favor of Guaranty Bank. However, the purported SBA lien was granted by an entity that was not legally organized (see § 79–3–51, 53, 69, 89, 99, 111, 113, etc., Mississippi Code of 1972, as amended), and which had *no legal title* to the equipment pledged as collateral. In the considered opinion of this Court, the bookkeeping entries were ineffective to legally vest ownership of the equipment in the corporation. For these reasons, coupled with the intentions and understanding of the individual debtors, the lien of SBA as to the farm machinery and equipment must fail. Succinctly stated, Whatley Farms, Inc., had no legal capacity to grant a lien on property which it did not own. Therefore, the lien of Guaranty Bank is determined by this Court, based on a preponderance of the evidence, to be superior to the purported lien created through the SBA loan transaction.

An Order will be entered consistent with this Opinion.