**In re James Estil ATCHISON, Sr. & Ruth Atchison, Debtors.**

**MERCHANTS BANK, Plaintiff-Appellant,**

v.

**James Estil ATCHISON, Sr. and Ruth Atchison, Defendants-Appellees.**

**No. 87–7223 Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Nov. 23, 1987.

J. Paul Whitehurst, Whitehurst & Whitehurst, Tuscaloosa, Ala., for plaintiff-appellant.

C. Michael Stilson, Interim Trustee, Tuscaloosa, Ala., for defendants-appellees.

Before HILL, FAY and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Appellant Merchants Bank (hereinafter "Merchants") appeals a district court order affirming the bankruptcy court's refusal to exempt four pieces of equipment from a stay imposed on the assets of appellees James Estil Atchison, Sr. and Ruth Atchison. The Atchisons filed a Chapter 7 bankruptcy petition on April 7, 1986, and Merchants, contending that it had a valid and enforceable security interest in the equipment, filed a motion for relief from stay ten days later. The bankruptcy court held that because the equipment was owned not by the corporation in whose name the security agreement was signed, A & W Woodyard, Inc. (hereinafter "A & W"), but by Estil Atchison individually, the security agreement was invalid and Merchants held no enforceable security interest. The district court affirmed on that basis. We reverse with respect to three of the items, and affirm as to the other.

The equipment at issue includes two 1980 Rebel wood trailers, one Viking loader, and one 1973 International truck. In 1981, all of these items were offered as security on a chattel mortgage running from A & W to Merchants. Record Excerpts at 7; Bankruptcy Transcript at 12. Estil Atchison, as an officer and shareholder of A & W, executed the mortgage. Bankruptcy Transcript at 13, 23. The mortgage included the following language: "The mortgagor warrants that the mortgagor is the absolute owner of said property, and that the same is free of encumbrances except as herein specifically mentioned." *Id.* at 14; Record Excerpts at 7.

At the hearing on the motion for relief from stay, however, Atchison argued that all of the equipment should remain covered by the stay because it belonged to him personally, not to his corporation. His testimony that Merchants knew that he owned the equipment personally but still wanted to use it as collateral, Bankruptcy Transcript at 13–14, went uncontroverted. The trailers, Atchison testified, were paid for by a loan from a third party, J.S. Deerman. That loan was repaid by L.J. Wilson, and Wilson was repaid with the proceeds from the loan to A & W that gave rise to this litigation. *Id.* at 5–7, 21–22. Despite a purported bill of sale for the trailers listing A & W as the purchaser, Record, Tab 1 at 10, Atchison maintained that they were his. Bankruptcy Transcript at 6–8. There was less controversy with respect to the loader and the truck. The loader, Atchison said, was purchased prior to the incorporation of A & W, *id.* at 10–11, and although it had been used in the business for some three years, he had not been paid by A & W for it. *Id.* at 15–17. The truck Merchants was seeking was not the one originally pledged as collateral, but a replacement Atchison bought personally when the original truck blew up. *Id.*

Apparently placing great weight on Atchison's testimony, the bankruptcy court found that he owned all four pieces of equipment. From this the court concluded that Merchants, Atchison, and A & W came to no "meeting of the minds" giving rise to a valid security agreement. The district court affirmed the bankruptcy court's findings of fact and conclusions of law without discussion.[1]

We note, at the outset, that the chattel mortgage here is governed by article 9 of Alabama's Commercial Code, which, in this instance at least, is identical to the Uniform Commercial Code. *See* Ala.Code § 7–9–102(2) (1984) ("This article applies to securi-

ty interests created by contract including . . . chattel mortgage[s]"). Under article 9, a security interest does not arise until (1) the debtor has signed an agreement describing the collateral,[2] (2) value has been given, and (3) the debtor has acquired "rights in the collateral." Ala.Code § 7–9–203(1) (1984). Because the first and third requirements appear to be the focus of this dispute, it is to those items we turn.

In spite of Atchison's signature on the chattel mortgage, the bankruptcy court concluded that there was no "agreement" between Merchants and Atchison because Atchison testified that he never intended to grant a security interest in equipment he owned personally. Assuming, as we must, that this self-serving testimony was credible, the parol evidence rule should have operated to exclude it. Although a security agreement, like any contract, must embody a "meeting of the minds," *In re Metzler*, 405 F.Supp. 622, 625 (M.D.Ala. 1975), it is also a general rule of contract law that in the absence of ambiguity, mutual mistake, or fraud, a writing is the sole expositor of the parties' intent. *Dixie Ag Supply, Inc. v. Nelson*, 500 So.2d 1036, 1041 (Ala.1986) ("To allow [debtor's] testimony as to his subjective intent when signing an otherwise unambiguous security agreement would be 'a classic violation of the parol evidence rule.'") (quoting *Kimbell Foods, Inc. v. Republic Nat'l Bank*, 557 F.2d 491 (5th Cir.1977), *aff'd sub nom. United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979)); *DeKalb Agresearch v. Abott*, 391 F.Supp. 152, 154 (N.D.Ala.1974), *aff'd*, 511 F.2d 1162 (5th Cir.1975). Just as the writing requirement prevents creditors from fraudulently establishing their secured status, the parol evidence rule prevents debtors from denying their contractual responsibilities. *See In re Delta Molded Prod-*

---

1. We note that the district court referred to a finding of the bankruptcy court with respect to a 1968 Chevrolet two-ton truck. Because of a footnote in the bankruptcy court's findings indicating that the Chevrolet was no longer part of the dispute, we assume that the district court referred inadvertently to the Chevrolet and meant instead the 1973 International truck.

2. The Alabama Code also provides that a signed agreement is not necessary when the collateral is, pursuant to agreement, in the possession of the secured party. Ala.Code § 7–9–203(1) (1984).

*ucts, Inc.*, 416 F.Supp. 938, 942 (N.D.Ala. 1976) (quoting Ala.Code § 7–9–203 comment 5 (1984)), *aff'd sub nom. Sterne v. Improved Machinery, Inc.*, 571 F.2d 957 (5th Cir.1978). There was neither evidence of fraud [3] nor ambiguity within the mortgage warranting the court's reliance on Atchison's testimony as to his intent.

If the district and bankruptcy courts were mistaken on their view of the Code's first requirement, a security agreement in writing, the parties are no less mistaken on their view of the significance of ownership in determining whether the third requirement, that the debtor have rights in the collateral, was met. The appellant contends that the bankruptcy court's findings of fact with respect to title were clearly erroneous. The appellees argue that "[a] corporation may not effectively pledge property that it does not own." Appellees' Brief at 10. The emphasis in both these arguments is misplaced.

It is clear under Alabama law that a debtor may indeed pledge collateral that he does not own. Section 7–9–105 of the Alabama Code, for example, instructs those construing the term "debtor" where "the debtor and the owner of the collateral are not the same person." Ala.Code § 7–9–105 (1984). Even more pointedly, § 7–9–112 outlines the rights of an owner of collateral when it has been pledged by someone else. *See* Ala.Code § 7–9–112 (1984).

As these sections indicate, the drafters of the Code intended that "rights in the collateral" not be equated with ownership. *See* 1 G. Gilmore, *Security Interests in Personal Property* § 11.5, at 353 (1965) (article 9 "does not specify the quantum of 'rights' which a debtor must have in collateral to support a security interest: evidently less than full 'legal title' will do and the secured party will get whatever rights the debtor had"). The only Alabama court to have discussed the requirement seems to have recognized this. In *Ledbetter v. Darwin Dobbs Co.*, 473 So.2d 197 (Ala.Civ.App.

1975), the court found that a debtor must have *"some* rights" in the collateral and then held that "voidable title" would suffice. *Id.* at 202 (emphasis added).

The question remains, of course, as to the meaning of "rights in the collateral" if the phrase does not require ownership. In answering it, we must analyze the case as we believe the courts of Alabama would. The uniformity of the other jurisdictions on this point makes our task much easier.

Indeed, all of the courts that have considered the question have ruled that an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest. *See In re Pubs, Inc. of Champaign*, 618 F.2d 432, 436 (7th Cir.1980) (individual debtor; corporate owner); *K.N.C. Wholesale, Inc. v. AWMCO, Inc.*, 56 Cal.App.3d 315, 128 Cal.Rptr. 345, 348 (1976) (parent corporation debtor; subsidiary owner); *Murray v. Conrad*, 346 N.W.2d 814, 820 (Iowa 1984) (individual debtor; corporate owner); *GMAC v. Washington Trust Co. of Westerly*, 120 R.I. 197, 386 A.2d 1096, 1098 (1978) (husband debtor; wife owner). Several other courts have held that a debtor's rights in the collateral may be found from any rights going beyond mere possession, such as the right to use and control the collateral. *See Douglas–Guardian Warehouse Corp. v. Esslair Endsley Co.*, 10 U.C.C. 176, 184 (W.D.Mich.1971); *Bellrose v. Denver Florists' Federal Credit Union*, 682 P.2d 1224, 1226 (Colo.Ct.App. 1983); *Morton Booth Co. v. Tiara Furniture, Inc.*, 564 P.2d 210, 214 (Okla.1977); *Uniroyal, Inc. v. Michigan Bank*, 12 U.C.C. 745, 750 (Mich.Cir.Ct.1972). Under both these principles, A & W had rights in the collateral. Atchison himself signed the mortgage on behalf of the corporation; even if he did own the equipment, his signature for A & W was sufficient to infer his consent to its use as collateral. Alternatively, A & W had rights in the equipment considerably greater than mere pos-

---

**3.** The court's finding that Merchants was aware that the equipment was owned individually by Atchison and accepted it as A & W's collateral does not constitute a finding of fraud. As ex-

plained below, A & W did not need to own the equipment to pledge it as collateral, so there was no misrepresentation involved.

session, because the equipment was in everyday use at the lumberyard.

■ For these reasons, we reverse the holdings of the district court with respect to all of the equipment but the 1973 International truck. According to Atchison's undisputed testimony, the truck in controversy is not the same truck originally pledged as collateral, and thus we affirm the district court's holding as to it.

AFFIRMED in part and REVERSED in part.