In re STANDARD FOUNDRY PRODUCTS, INC., Debtor.

Larry KONDIK, Plaintiff,

v.

Deborah K. EBNER, not individually but as Trustee of the Estate of Standard Foundry Products, Inc., Standard Foundry Products, Inc. and First State Bank of Pekin, Defendants.

Bankruptcy No. 95 B 01200.
Adversary No. 96 A 01035.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 24, 1997.

James C. Truax, Law Office of James C. Truax, Chicago, IL, for Plaintiff.

Joel Schechter, Grossman, Mitzenmacher & Schechter, Chicago, IL, for Defendants.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint filed by Larry Kondik ("Larry") against, *inter alia*, First State Bank of Pekin (the "Bank") for declaratory relief. For the reasons set forth herein, the Court hereby grants judgment in favor of Larry and orders the Chapter 7 Case Trustee to turnover to Larry the escrowed proceeds, plus interest earned thereon, from the sale of the subject equipment.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O).

## II. FACTS AND BACKGROUND

On January 19, 1995, Standard Foundry Products, Inc. (the "Debtor") filed a Chapter 11 bankruptcy petition. On April 2, 1996, the case was converted to Chapter 7. Thereafter, on July 24, 1996, Larry filed the instant complaint seeking declaratory and other relief. Larry, a former officer of the Debtor, is the son of Joseph and Sharon Kondik, principals of the Debtor. Over the course of several years, Larry permitted the Debtor to use various items of machinery and equipment which Larry allegedly owned. *See* Larry's Exhibit No. 1 and Exhibit A to the Complaint. Larry's ownership of these items was not previously disclosed to the Court during the Chapter 11 phase of the case. Larry acquired the equipment piecemeal over the years and refurbished it. Larry testified that he did not permit or authorize the Debtor or his parents to use his equipment as collateral or security for the debt to the Bank. *See* Bank's Group Exhibit A. Larry admitted, however, that he never expressly told his parents that they could not pledge the equipment. He testified that he may have alerted Tim Owen of the Bank of his interest in the equipment. Joseph Kondik substantially corroborated Larry's testimony. Joseph admitted that he never informed the Bank of Larry's claims to the subject equipment.

On December 5, 1988, the Debtor, by and through its shareholders and officers, Joseph and Sharon Kondik, executed a promissory note, security agreement, and financing statements in favor of the Bank in order to borrow the principal sum of $705,000. *See* Bank's Group Exhibit A. Pursuant to the security agreement and financing statements, the Debtor pledged to the Bank, as collateral

for the loan, all of the Debtor's right, title, and interest in and to certain assets including, but not limited to, cash, accounts receivable, inventory, work in process, furniture, fixtures, equipment, and general intangibles. *Id.* In addition, the Debtor pledged to the Bank all after acquired property and all proceeds of the foregoing assets, including all goods, additions, replacements, substitutions, attachments, and accessions. *Id.*

Larry maintains that some of the equipment, which was located on the business premises of the Debtor, was owned by him and not subject to the Bank's security agreement. The Bank, on the other hand, contends that Larry is estopped from denying that the assets were encumbered because he allowed the Debtor to appear as the owner of the property and consented to the pledge of the disputed equipment to the Bank by the Debtor as collateral for the loan.

On August 22, 1996, the Court conducted an evidentiary hearing with respect to Larry's request for the entry of a preliminary injunction restraining and enjoining an auction sale by the Chapter 7 Case Trustee of all items, including the subject equipment allegedly owned by Larry. On August 29, 1996, after conducting a hearing, the Court denied Larry's request for a preliminary injunction. Further, the Court required that the sale proceeds received at the auction with regard to the equipment claimed to be owned by Larry be segregated and escrowed. On August 27, 1996, an auction sale was conducted and the sum of $20,394.50 was placed in escrow. The current amount due and owing the Bank from the Debtor is in excess of that amount.

The ultimate issue to be decided is whether the Bank's security interest attached to those items of equipment and their proceeds which Larry claims are his. Resolution of the issue depends on whether Larry, by his actions or silence, should be estopped from asserting his claim of ownership in the equipment.

### III. *APPLICABLE STANDARDS*

#### A. *Attachment and Enforcement of Security Interests*

■ Illinois originally adopted its version of the Uniform Commercial Code (the "UCC") in 1961, which has been subsequently amended from time to time. Section 9–203 thereof, which governs the attachment and enforceability of security interests, provides in relevant part as follows:

(1) Subject to the provisions of Section 4–208 on the security interest of a collecting bank, Section 8–321 on security interests in securities and Section 9–113 on a security interest arising under the Article on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and . . .;

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

810 ILCS 5/9–203. The burden of proving that an item of property is subject to a security interest is on the party asserting the interest. *See In re Engle,* 93 B.R. 58, 60 (E.D.Pa.1987).

In the matter at bar, there is no dispute that there was a signed security agreement between the Debtor and the Bank; that the security interest attached to all equipment, present and after-acquired; and that value was given—a loan by the Bank was extended to the Debtor in the sum of $705,000. The crucial issue is whether the Debtor had "rights in the collateral," which Larry claims is his property, in order for the Bank's security interest to attach to the subject equipment.

■ The language "rights in the collateral" is not defined in the UCC. *See In re*

*Pubs, Inc. of Champaign,* 618 F.2d 432, 436 (7th Cir.1980) (applying Illinois law); *Equipment Fin. Group, Inc. v. Traverse Computer Brokers,* 973 F.2d 345, 348 (4th Cir.1992) (applying Michigan law); *First Nat. Bank of Alexander City v. Avondale Mills Bevelle Employees Fed. Credit Union,* 967 F.2d 556, 559 (11th Cir.1992) (applying Alabama law). The drafters of the UCC intended that "rights in the collateral" not be equated with ownership. *See Merchants Bank v. Atchison (In re Atchison),* 832 F.2d 1236, 1239 (11th Cir.1987) (citation omitted). Article 9 of the UCC is concerned with whether the debtor "has acquired sufficient rights in the collateral for the security interest to attach" and is not concerned with the title to the collateral. *Community Bank of Chillicothe v. Campbell,* 813 S.W.2d 40, 43 (Mo.Ct.App.1991).

■ The phrase "rights in the collateral" has generally been recognized to include the following: (1) the debtor has possession and title to the goods; (2) the true owner consents to the debtor's use of the collateral as security; or (3) the true owner is estopped from denying the creation of the security interest. *See Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.,* 272 Ill.App.3d 370, 376–77, 208 Ill.Dec. 455, 460, 649 N.E.2d 511, 516 (1st Dist.1995) (citations omitted); *Pubs,* 618 F.2d at 436; *Avco Delta Corp. Canada Ltd. v. United States,* 459 F.2d 436, 440–41 (7th Cir.1972); *Atchison,* 832 F.2d at 1239.

■ Mere possession of goods is not a sufficient interest to permit attachment of a security interest. *Rohweder v. Aberdeen Production Credit Ass'n,* 765 F.2d 109, 112 (8th Cir.1985). Additionally, a mere possessory interest for a limited purpose, such as repair of property, does not constitute "rights in the collateral." *Rameker v. Federal Railroad Administration (In re Chicago, Madison & Northern Ry. Co.),* 36 B.R. 292, 298 (Bankr.W.D.Wis.1984). A debtor has sufficient rights in collateral for a security interest to attach "where a debtor gains possession of collateral pursuant to an agreement endowing him with any interest other than naked possession." *American Nat. Bank v. Joy (In re Joy),* 169 B.R. 931, 936 (Bankr.D.Neb.1994) (quoting *Morton Booth*

*Co. v. Tiara Furniture, Inc.,* 564 P.2d 210, 214 (Okla.1977)). *Accord Kinetics Tech. Int'l Corp. v. Fourth Nat. Bank of Tulsa,* 705 F.2d 396, 399 (10th Cir.1983). In determining rights in collateral, courts should consider "the outward appearance of the debtor's rights of ownership and control in the collateral." *Joy,* 169 B.R. at 936 (quoting *Brown v. United States,* 622 F.Supp. 1047, 1049–51 (D.S.D.1985)).

■ The Seventh Circuit has said that the requirement of "rights in the collateral" illustrates the general principle that "one cannot encumber another man's property in the absence of consent, estoppel or some other special rule." *Pubs,* 618 F.2d at 436 (quoting *First Nat. Bank & Trust Co. of Augusta v. McElmurray,* 120 Ga.App. 134, 138, 169 S.E.2d 720, 724 (1969)). A debtor may have sufficient "rights" for purposes of § 9–203 if the true owner of the collateral has agreed to the debtor's use of the collateral as security or if the true owner has become estopped to deny the creation or existence of the security interest. *See Pubs,* 618 F.2d at 436. " '[W]here the true owner of the property allows another to appear as the owner of or to have full power to dispose of the property, so a third party is led into dealing with the apparent owner,' the true owner will be estopped from asserting that the apparent owner did not have the title." *Id.* at 439 (citing *National Bond Inv. Co. v. Shirra,* 255 Ill.App. 415, 419 (1930)). *Accord Exchange Nat. Bank v. A.J. Rackers, Inc. (In re A.J. Rackers, Inc.),* 167 B.R. 168, 175 (Bankr.W.D.Mo.1994); *Advanced Turbo Prods., Inc. v. Congress Fin. Corp. (In re Advanced Turbo Prods., Inc.),* 126 B.R. 630, 631 (Bankr.S.D.Fla.1991); *Union State Bank of Hazen v. Cook (In re Cook),* 63 B.R. 789, 798 (Bankr.D.N.D.1986). This equitable estoppel against the true owner of the property, however, is not to be applied lightly. *In re Atlantic Marble, Inc.,* 126 B.R. 463, 467 (Bankr.E.D.Pa.1991) (citations omitted).

In *Pubs,* which was decided under the former Bankruptcy Act, the Seventh Circuit held that a bankrupt corporation and its bankruptcy trustee were estopped from denying the validity of a bank's security interest. The bank lent money to parties who

were then, or who were to become, directors, officers, and sole shareholders of the bankrupt corporation. The parties used the money to buy equipment. Before the promissory note was signed giving the bank a security interest in the equipment, the debtors transferred the equipment to the bankrupt corporation. The court held that even though the debtors did not have rights in the collateral where the security interest was given, they were estopped from challenging the validity of the bank's security interest because the bill of sale expressly stated that the collateral was transferred subject to a security interest in favor of the bank.

## B. *The Doctrine of Estoppel*

■ Under Illinois law, one may be estopped from asserting his rights if: (1) words or conduct must have led another party to take some action it would not otherwise have taken but for the words or actions of the estopped party; (2) the party asserting the estoppel must have actually and reasonably relied on the words or conduct, and it must not have known of or had access to facts contrary to those on which it relied; and (3) the reliance must have caused the party asserting the estoppel harm. *Chicago Dist. Council of Carpenters Pension Fund v. Monarch Roofing Co., Inc.*, 601 F.Supp. 1112, 1117 (N.D.Ill.1984) (citing *Pubs*). Where silence is the ground of the estoppel, there must be evidence that the party estopped had knowledge of the facts, the other party was ignorant of the truth, and was misled into doing that which he would not have done except for that silence. *Pubs*, 618 F.2d at 438 (citation omitted).

## IV. *DISCUSSION*

■ For purposes of this matter, the preponderance of the evidence established at trial that in 1988 the Debtor had possession of, but not title to, the subject equipment. Larry consented to the Debtor's possession and use of the equipment in its business, but did not consent to its use as security for the Bank's loan. The Bank argues that Larry has not sustained his burden of proof regarding his ownership of the equipment because of his relative youth and lack of documenta-

tion. The Court rejects the Bank's conclusion in light of Larry's testimony, as corroborated by that of his father, Joseph. Their testimony is direct evidence, not rebutted by the Bank's arguments. The Bank proffered no other evidence to show that someone else (the Debtor, Joseph or Sharon, for example) was the true owner of the equipment. Lack of corroborative documentation is not fatal to Larry's claim of ownership. *See generally* 73 C.J.S. *Property* §§ 35–37 (1983).

■ Larry, the true owner, testified that he did not expressly consent to the Debtor's use of the collateral as security for the loan from the Bank. Both Larry and Joseph Kondik testified that the subject equipment, along with the Debtor's own property used to collateralize the loan, was located at the Debtor's premises and the Debtor utilized the equipment in its day to day operations with Larry's permission. It is undisputed that the Debtor had the right to both possess and use the equipment in its foundry business. Thus, the Court finds that the preponderance of the evidence established that Larry consented to the Debtor's use and possession of the equipment. This was sufficient to create the appearance of ownership of the equipment in the Debtor.

Both witnesses testified that the Debtor did not pay any money to Larry for use of the equipment, nor did Joseph or Larry advise the Bank at the time of the loan that the subject equipment was not the Debtor's and was not to be a part of the collateral base given the Bank to secure the loan. Thus, such outward appearance conveyed the impression that the Debtor possessed sufficient rights of ownership and control over the disputed collateral. The Court finds that the Debtor had more than mere possession of the subject collateral. In addition, when the Debtor provided the Bank a list of collateral, it did not specifically except out the subject collateral belonging to Larry. As a result of the foregoing, the Court finds that the Debtor had "rights" in the equipment for purposes of § 9–203. *See generally* 8A Ronald A. Anderson, *Anderson on the Uniform Commercial Code*, § 9–203:196 at 850–52 (rev. 3d ed. 1996) (collecting cases).

██ Therefore, the Court concludes that the Debtor had sufficient rights in the equipment; the Bank gave value to the Debtor; and the Debtor signed the security agreement granting the Bank a security interest in all the equipment in which it had an interest. Accordingly, for purposes of § 9–203, the Bank's security interest attached to the subject equipment. Next, the Court must determine whether Larry is estopped from denying the creation or existence of the security interest in the equipment.

██ The Court finds that Larry is not estopped from asserting his ownership in the subject collateral. The Bank has failed to prove all of the requisite elements for estoppel. First, the Bank failed to establish that Larry's actions or conduct led the Bank into making the loan to the Debtor. Joseph and Sharon Kondik were the Debtor's respective president and secretary/treasurer, who on behalf of the Debtor in such capacities, as well as individually, executed the promissory note and security agreement in favor of the Bank and granted it a security interest in all equipment owned and thereafter acquired. Larry did not participate in the execution of these documents. Hence, only Larry's silence could serve to estop him. He testified, however, that he may have alerted the Bank of his claim to the equipment.

The second element for estoppel appears to have been met. The Bank actually and reasonably relied on the Kondiks' representations regarding the Debtor's equipment. Aside from Larry's possible notification to the Bank, it would otherwise have had no reason to believe that the Debtor did not own the subject equipment. Further, the Bank did not know of or have access to the fact that Larry owned some of the equipment.

The fatal defect is the lack of evidence to establish the third element—that the Bank was misled into making the loan and would not have done so had it known that Larry was the true owner of some, but not all, of the Debtor's foundry equipment. The Bank's reliance was really on the Kondiks' representations that the security interest in the Debtor's equipment encompassed all the equipment in which the Debtor had an interest. The record is devoid of any evidence that the Bank was somehow misled by Larry's silence into believing his items of equipment were actually owned by the Debtor.

## V. CONCLUSION

For the foregoing reasons, the Court hereby grants judgment in favor of Larry and orders the Chapter 7 Case Trustee to turnover to Larry the escrowed sale proceeds, plus interest earned thereon, from the sale of the subject equipment.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### ORDER

For the reasons set forth in a Memorandum Opinion dated the 24th day of March 1997, the Court hereby grants judgment in favor of Larry Kondik and orders the Chapter 7 Case Trustee to turnover to him the escrowed proceeds, plus interest earned thereon, from the sale of the subject equipment.