**In the Matter of 4–R MANAGEMENT, INC., Debtors.**

**Bankruptcy No. 95–83086–JAC–7.**

United States Bankruptcy Court, N.D. Alabama, Northern Division.

May 8, 1997.

Cynthia R. Slate–Cook, Decatur, AL, for debtors.

Jack Lavette, Birmingham, AL, for First Bank of Eva.

**234**

Stuart Maples, Huntsville, AL, Trustee.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

This is a dispute between the trustee in bankruptcy for 4–R Management, Inc. and the First Bank of Eva over the entitlement to a coin collection. The trustee filed a motion against the bank for the turnover of the coins and the bank has countered with a motion to lift stay so that it can foreclose its lien on same. The hearing on both these matters was held on the 5th day of March, 1997. This is a core proceeding under 28 U.S.C. § 157(a), (b)(2)(E), over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334. Upon due consideration of the evidence, arguments of counsel, applicable law, and for the reasons set forth herein, the Court finds that the trustee's motion for turnover is due to be denied and the motion to lift stay granted.[1]

## I. FINDINGS OF FACT

The facts of this proceeding are essentially undisputed. On November 8, 1995, 4–R Management filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On August 30, 1996, the case was converted to Chapter 7. Thereafter, on January 27, 1997, the trustee filed the instant motion seeking the turnover of all property held in certain collateral boxes of the bank for the benefit of 4–R Management and more specifically one coin collection held by the bank as security.

On June 10, 1994, 4–R Management, by and through its officers, Chris and Lucretia Ryan (hereinafter the "Ryans"), executed a promissory note to the bank in the amount of $ 30,137.00. The Ryans signed the promissory note both individually and as officers of 4–R Management. The Ryans also executed a security agreement in their individual capacities, dated June 10, 1994, pledging one "book coin collection" and various other items as security for the note. The promissory note incorporated by reference this separate secu-

rity agreement. It is undisputed that the coins were property of 4–R Management and that the bank took possession of the same on June 10, 1994.

On July 28, 1995, 4–R Management, by and through the Ryans, executed a renewal note in satisfaction of the original note. The renewal note incorporated by reference the security agreement dated June 10, 1994 and expressly provided for a security interest in the coin collection as follows:

> **SECURITY INTEREST:** I give you a security interest in all of the Property described below that I now own and that I may own in the future ... wherever the property is or may be located ...
>
> . . . .
>
> The secured property includes, but is not limited by, the following: Security agreements dated 6–10–94 and one agreement includes a tractor, bush hog, farm products and cattle, coin collection and lawn tractor line of credit account.

4–R Management further represented that it owned all of the property offered as security for the loan and warranted the claim of the bank to the property was "ahead of the claims of any other creditor." Bank's Brief, Ex. C.

On April 26, 1996, 4–R Management, by and through the Ryans, executed a second renewal note in satisfaction of the first renewal note. With similar language, the second renewal note incorporated by reference the security agreement dated June 10, 1994 and took a security interest in the coin collection:

> **Security**—You have certain rights that may affect my property as explained on page 2. This loan is further secured. (b) Security Agreement—I give you a security interest in the Property described below. The rights I am giving you In this Property and the obligations this agreement secures are' defined on page 2 of this agreement. Separate Security Agreement Dated 6–10–94.
>
> . . . .

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 9014.

Security—I am giving a security interest in ... Cattle, Equipment, Coin Collection. The note further provided that the "security agreement will last until it is discharged in writing." Bank's Brief, Ex. D.

## II. CONCLUSIONS OF LAW

The trustee asserts for 4–R Management that the security agreement is invalid and that the bank cannot enforce its security interest against the trustee because the debtor corporation was the true owner of the coin collection at the time of the execution of the June 10, 1994, July 28, 1995 and April 26, 1996 notes and the Ryans executed the security agreement in their individual capacities; not as officers of 4–R Management. The bank, on the other hand, contends that it has a valid, perfected security interest in the coins from June 10, 1994 forward by virtue of possession, by virtue of the June 10, 1994 security agreement as incorporated in the original note executed by debtor, and by virtue of the written grant of a security interest in the coins in the first and second renewal notes. Based upon the foregoing record and for the reasons set forth herein, the Court finds that the bank has a valid and enforceable security interest in the coins as evidenced by:

1) The express grant of a security interest in the coin collection by the corporation to the bank in the renewal notes dated July 28, 1995 and April 26, 1996; and

2) The written security agreement executed by the Ryans and pledging the coins on behalf of 4–R Management where:

   a) The Ryans signatures created an inference of consent by 4–R Management for the Ryans to execute the security agreement.

   b) The use and control by, the Ryans, as officers, over corporate property gave the Ryans rights in the collateral sufficient to cloak them with authority to grant a security interest in same.

3) The unwritten security agreement created when the coins were delivered to the banks' possession by the officers and sole stockholders of the debtor simultaneously with the extension of credit by the bank to the debtor.

■ Section 541 of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an estate that is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Whether an interest is property of the estate within the meaning of the Bankruptcy Code is a federal question to be decided by federal law, but in determining what interests in property the debtor has at the time of filing, the Court must look to state law. *White v. Dawson (In re Dawson),* 52 B.R. 444 (Bankr.N.D.Ala. 1984).

■ Section 7–9–203(1) of the Alabama Commercial Code, which governs the attachment and enforceability of security interests, provides that a security interest attaches and becomes enforceable when:

   (a) The collateral is in tie possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; and

   (b) Value has been given; and

   (c) The debtor has rights in the collateral.

Additionally, in order for a secured party to enforce its security interest against the trustee in bankruptcy, the secured party must have perfected its security interest prior to the commencement of the case. Sections 7–9–304(1) and 7–9–305 provide that a security interest in money shall be perfected only by the secured party's taking possession. No filing is necessary.

Initially, the Court finds that the bank clearly gave "value". for the coin collection by the extension of credit to 4–R Management in satisfaction of subsection 7–9–203(1)(b). *See Credit Alliance Corp. v. Cornelius & Rush Coal Co., Inc.,* 508 F.Supp. 63 (N.D.Ala.1980); *First Md. Leasecorp v. M/V Golden Egret,* 764 F.2d 749 (11th Cir.1985). The Court further finds that 4–R Management had sufficient rights in the coins under subsection 7–9–203(1)(c) to grant a security interest in same as the undisputed owner of the collateral. That leaves as the only element in question whether the collateral is in the possession of the bank pursuant to an oral agreement or whether 4–R Management

executed a security agreement describing the collateral within the meaning of subsection 7–9–203(1)(a).

### A. 4–R Management expressly granted a security interest in the coin collection by execution of the July 28, 1995 and April 26, 1996 renewal notes.

■ A security interest is an interest in property that secures payment or performance of an obligation. *In re Garrett O. Driscoll & Assoc., Inc.*, 151 B.R. 634 (Bankr. D.Mass.1993). Generally, a security agreement which contains a description of the collateral and which is signed by the debtor is essential to the creation of a security interest in collateral. *In re Blackerby*, 53 B.R. 649 (Bankr.N.D.Ala.1985).

■ On July 28, 1995, 4–R Management, by and through the Ryans, executed a renewal note to pay off the original debt and expressly granted the bank a security interest in the coin collection in its corporate capacity. On April, 26, 1996, 4–R Management executed a second renewal note in satisfaction of the 1995 note and expressly pledged the coins as security for the note. The Court finds that the bank has an enforceable security interest in the coins by virtue of these express grants of a security interest by the debtor. The unambiguous language in the notes clearly reflected an intent of the parties that the collateral be given as security for the debt. The Court further finds that bank perfected its security interest by retaining possession of the coin collection pursuant to sections 7–9–304(1) and 7–9–305 of the Alabama Code.

Although this finding is determinative of the dispute in the present case, the Court will address the concerns of the trustee below.

### B. Oral security agreement

■ The first requirement of section 7–9–203(1)(a) provides that a signed security agreement is not necessary when the collateral is, pursuant to agreement, in the possession of the secured party (nor is a UCC–1 financing statement necessary in the case of a possessory security interest). The bank has been in possession of coin collection since June 10, 1994. The coins were delivered to the bank by the Ryans who were the sole officers of the corporation at the time that the bank extended credit to the corporation. The bank's possession of the collateral eliminated the necessity of a signed security agreement and had the additional effect of perfecting its security interest therein. ALA. CODE §§ 7–9–302(1)(a), 7–9–304(1), 7–9–305 (1975); *In re Fish*, 128 B.R. 468 (Bankr.N.D.Okla.1991)(finding oral security agreement became enforceable when creditor took possession of collateral); *In re Pembroke Dev.*, 124 B.R. 396 (Bankr.S.D.Fla. 1991) (finding creditor perfected its security interest in certificates of deposit, pledged as collateral by non-debtor individuals, when it took possession of certificates). The trustee asserts, however, that the bank's possession of the collateral was not taken pursuant to agreement.

Section 7–1–201 of the Alabama Code defines die term "agreement" as it is used in article 9 as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance. . . ." It is undisputed that the Ryans transferred possession of the coins to the bank and that there is no substantial identity between 4–R Management and the Ryans. The Court finds that sufficient evidence exists to find that 4–R Management, by and through the Ryans, clearly intended to pledge the coins as collateral to the bank for the loan. The promissory note executed by 4–R Management specifically incorporates the terms of the June 10, 1994 security agreement pursuant to which the bank took its security interest in the coin collection. Although the Ryans did not sign the security agreement as officers of the corporation, the Court finds that 4–R Management's execution of the original promissory note is evidence of its intent to transfer possession of the coins to the bank by "agreement" within the meaning of sections 7–9–203(1)(a), 7–1–201. The execution of the first and second renewal notes, pursuant to which 4–R Management expressly provided for a security interest in the coin collection, is further evidence of the corporation's intent to transfer

possession of and pledge the coins as collateral to the bank.

## C. Written security agreement

■ The Court further finds that the Ryans had sufficient "rights in the collateral" to transfer possession of and create a security interest in the coin collection within the meaning of section 7–9–203(1)(c) by executing the written security agreement dated June 10, 1994. Although the Alabama Code does not define the phrase "rights in the collateral" as used in subsection 7–9–203(1)(c), the Eleventh Circuit has observed "that 'rights in the collateral' is not the same as ownership, a person may pledge property that is owned by someone else ..." *First Nat'l Bank of Alexander City v. Avondale Mills Bevelle Employees Fed. Credit Union (In re Avondale)*, 967 F.2d 556 (11th Cir. 1992) (citing *Merchants Bank v. Atchison (In re Atchison)* 832 F.2d 1236 (11th Cir.1987)). Instead, the Commercial Code "is concerned with whether the debtor 'has acquired sufficient rights in die collateral for the security interest to attach' and is not concerned with the title to the collateral." *Kondik v. Ebner (In re Standard Foundry Products, Inc.)*, 206 B.R. 475, 478 (Bankr.N.D.Ill.1997) (citations omitted) (finding corporation had sufficient rights in equipment owned by non-debtor officer where officer consented to the debtor's use and possession of the equipment).

In the case of *In re Atchison*, 832 F.2d 1236 (11th Cir.1987), a secured creditor moved for relief from stay with respect to certain items of equipment in an individual debtor's Chapter 7 bankruptcy proceeding. Atchison defended seeking to exempt the equipment contending that the creditor's security agreement was invalid and unenforceable because the corporation that executed same was not the owner. He asserted that the equipment was owned by him in his individual capacity. Atchison, however, was apparently the sole stockholder and president of the corporation at the time of the execution of the security agreement by the corporation granting the security interest in the equipment. The Eleventh Circuit found that the corporation, in whose name the security agreement was signed, had sufficient rights in the equipment to satisfy the requirements of section 7–9–203(1)(c) where the debtor signed the chattel mortgage on behalf of the corporation and the collateral was in everyday use at the corporation's lumberyard.

The trustee argues that the analysis in the *Atchison* case is inapplicable because the fact patterns of the present case and *Atchison* are reversed. The Court believes, however, that the trustee's analysis of *Atchison* is too restrictive. In *Atchison*, the Eleventh Circuit discussed the meaning of the term "rights in the collateral" and stated in relevant part:

> It is clear under Alabama law that a debtor may indeed pledge collateral that he does not own. Section 7–9–105 of the Alabama Code, for example, instructs those construing the term 'debtor' where 'the debtor and the owner of the collateral are not the same person.' Even more pointedly, § 7–9–112 outlines the rights of an owner of collateral when it has been pledged by someone else.
>
> As these sections indicate, the drafters of the Code intended that 'rights in the collateral' not be equated with ownership.
>
> ....
>
> [A]ll of the courts that have considered the question have ruled that an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest. Several other courts have held that a debtor's rights in the collateral may be found from any rights going beyond mere possession, such as the right to use and control the collateral.

*Id. at* 1238 (citations omitted).

Applying this analysis the court found Atchison's signature for the corporation was sufficient to infer his consent to allow the corporation to use the equipment as collateral. Alternatively, the court found that the corporation's rights in the equipment were greater than mere possession because the equipment was used in the ordinary course of the corporation's business.

The Court in the present case finds that the Ryans' signatures on the security agreement granting the bank a security interest in the coins securing the corporate debt was sufficient to infer corporate consent to use the coins as collateral. The Ryans, as officers and owners of the closely held corporation, had sufficient rights in the coin collection by virtue of their relationship with the debtor (i.e. its sole stockholders and officers) and their use and control over the coin collection to grant a security interest therein under section 7–9–203(1) for the benefit of 4–R Management. Because of the inference of consent by 4–R Management and the use and control of the coins by the Ryans, the corporation (and its trustee) is now estopped, just as Atchison was, to deny the validity of the security agreement.

Based upon tie foregoing, the Court finds that the bank's security interest attached to the collateral and is enforceable against the trustee as evidence by:

1) The delivery to the bank by the Ryans of the coin collection in connection with their security agreement dated June 10, 1994 and the continued possession by the bank of the same since June 10, 1994.

2) 4–R Management's execution of the promissory note, dated June 10, 1994, which incorporated the security agreement.

3) 4–R Management's execution of the first renewal note, dated July 28, 1995, pursuant to which the corporation expressly granted a security interest in the coin collection and referenced the security agreement.

4) 4–R Management's execution of the second renewal note, dated April, 26 1996, expressly granting a security interest in the coin collection and incorporating the security agreement.

The Court further finds that there is little or no equity in the coin collection and that the stay is due to be lifted to allow the bank to sell tie coins and apply the proceeds to its debt.

A separate order will be entered consistent with this opinion.

## ORDER

In conformity with and pursuant to the memorandum opinion of the Court contemporaneously entered herewith and for reasons set forth therein,

It is ORDERED, ADJUDGED AND DECREED that:

1. The motion to turnover property filed by the trustee be and hereby is DENIED.

2. The motion for relief from stay filed by the First Bank of Eva be and hereby is GRANTED to allow the bank to sell the coins and apply the proceeds to its debt.

Done and Ordered this the 8th day of May, 1997.