In re STANDARD FOUNDRY
PRODUCTS, INC.,
Debtor.

Larry KONDIK, Plaintiff,

v.

Deborah K. EBNER, not individually but as Trustee of the Estate of Standard Foundry Products, Inc., Standard Foundry Products, Inc. and First State Bank Of Pekin, Defendants.

Bankruptcy No. 95 B 01200.
Adversary No. 96 A 01035.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 12, 1997.

Joel Schechter, Grossman, Mitzenmacher & Schechter, Chicago, IL, for Plaintiff.

James C. Truax, Law Office of James C. Truax, Chicago, IL, for Defendants.

Deborah K. Ebner, Teller, Levit & Silvertrust, Chicago, IL, Trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of First State Bank of Pekin (the "Bank") pursuant to Federal Rule of Bankruptcy Procedure 9023 to reconsider a Memorandum Opinion and Order entered on March 24, 1997 granting judgment in favor of Larry Kondik ("Larry"). For the reasons set forth herein, the Court hereby denies the motion.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O).

### II. FACTS AND BACKGROUND

On March 24, 1997, the Court entered a Memorandum Opinion and Order (the "Opinion") wherein the Court granted judgment in favor of Larry and ordered the Chapter 7 Case Trustee to turnover to Larry segregated and escrowed proceeds. *See Kondik v. Ebner (In re Standard Foundry Prods., Inc.),* 206 B.R. 475 (Bankr.N.D.Ill.1997). The ultimate issues before the Court were: (1) whether the Bank's security interest, which was granted by the Debtor, Standard Foundry Products, Inc. through its shareholders and officers, Joseph and Sharon Kondik, attached to certain equipment and its proceeds that Larry claimed were his; and (2) whether the Bank was entitled to priority over Larry's claim of ownership. The Court held that this equipment, which was sold by the Chapter 7 Case Trustee at an auction, was in fact owned by Larry and that the Bank failed to establish that its security interest attached to the equipment in derogation of and as a priority over Larry's claims. Further, the Court held that the Bank failed to demonstrate that Larry should be estopped by his silence from asserting his claims.

## III. *APPLICABLE STANDARDS*

The Bank seeks to vacate the Opinion under Federal Rule of Bankruptcy Procedure 9023, which incorporates by reference Federal Rule of Civil Procedure 59. The Seventh Circuit has made it clear that under the former version of Rule 59, the time a motion is served controlled whether it was treated as a Rule 59(e) motion. *See Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995). If such a motion was served within ten days of a final judgment, it was considered a Rule 59(e) motion. *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir.1992); *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). Effective December 1, 1995, Rule 59(e) was amended to require that "[a]ny motion to alter or amend a judgment shall be *filed* no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e) (emphasis supplied). The Bank's motion was filed on April 3, 1997, within ten days of the entry of the Opinion on the docket.

■ Rule 59(e) motions serve a narrow purpose and must clearly establish either a manifest error of law or fact or must present newly discovered evidence. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996); *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986); *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995) (citation omitted). The function of a motion to alter or amend a judgment is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory. *Moro*, 91 F.3d at 876 (citation omitted); *King v. Cooke*, 26 F.3d 720, 726 (7th Cir.1994), *cert. denied*, 514 U.S. 1023, 115 S.Ct. 1373, 131 L.Ed.2d 228 (1995). Moreover, the purpose of such a motion "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.)*, 125 B.R. 963, 977 (Bankr. N.D.Ill.1990) (citations omitted). The rulings of a bankruptcy court "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988). "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *BNT Terminals*, 125 B.R. at 977. The decision to grant or deny a Rule 59(e) motion is within the Court's discretion. *See LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir.1995).

## IV. *DISCUSSION*

First, the Bank argues that the trial testimony of Larry and Joseph Kondik is in conflict with the testimony given at their depositions with respect to the Bank's knowledge as to Larry's claim of ownership to the subject equipment. Larry testified at trial that he may have alerted Tim Owen of the Bank with regard to his claim to the equipment. *See* 206 B.R. at 477. The Bank contends, however, that in his prior deposition testimony Larry was unable to recall if or when he had a conversation with anyone from the Bank. The Bank therefore concludes this constitutes a conflict in his testimony.

■ The Court disagrees with the Bank's characterization of Larry's testimony at trial as being in conflict with his testimony at his deposition. The fact that a witness does not recall an event at a deposition, but later testifies that he may recall same, does not necessarily constitute an impeaching conflict in his testimony. Moreover, standing alone, it will not properly serve as the basis for discrediting the otherwise credible evidence offered by the witness. Human memory is frail and fallible at best. That a witness had no recollection of an event at one point in time, later remembered, does not ipso facto mean the event did not occur or that the otherwise credible testimony of the witness should be ignored. Larry may have had time to reflect upon and recall this possible

conversation he might have had with Tim Owen of the Bank.

The Bank also alleges that Joseph's trial testimony is in conflict with his deposition testimony. The Court stated in the Opinion that Joseph admitted that he never informed the Bank of Larry's claims to the subject equipment. *See* 206 B.R. at 477. Joseph also testified at his deposition that he did not inform the Bank of Larry's ownership of the equipment. The trial testimony and deposition testimony do not appear to be in conflict. Thus, the Court is perplexed by the Bank's argument that Joseph's trial testimony is in conflict with the testimony given at the deposition relative to the equipment proceeds at issue. That the Debtor had Larry's permission to use the equipment in its business, but no permission to grant a security interest in it to the Bank as collateral for the loan is undisputed.

Next, the Bank maintains that the documentary evidence submitted by the parties supports the conclusion that either the Debtor, Joseph, or his wife, Sharon, were the true owners of all of the equipment at issue, not Larry. In support of this contention, the Bank argues that all of the checks issued in payment for certain items of equipment were issued by Joe's Core & Machine and/or National Castings, two companies which Joseph Kondik testified were owned and operated by him. Further, the Bank submits that there is a list of equipment prepared on the letterhead of National Castings, and there is the Schedule C attached to the 1977 personal income tax return of Joseph and Sharon Kondik which tends to support that they listed the equipment for depreciation purposes on their income tax return. The Bank contends that the only evidence of ownership produced by Larry was his "naked testimony."

 The Court finds this argument unconvincing and lacking merit. First, as the Court previously stated, the fact that Larry did not produce any documentary evidence such as bills of sale, copies of checks, money orders, or other evidence of his payment for the items is not fatal to his claim of ownership. Illinois law recognizes the general common law presumption that the party in possession of personal property holds title to that property. *See Almar Communications, Ltd. v. Telesphere Communications, Inc. (In re Telesphere Communications, Inc.),* 167 B.R. 495, 502 (Bankr.N.D.Ill.1994) (citations omitted), *rev'd on other grounds,* 205 B.R. 535 (N.D.Ill.1997). This presumption may be rebutted or overcome by evidence of another's ownership. *People v. Poindexter,* 18 Ill.App.3d 436, 440, 305 N.E.2d 400, 403 (1st Dist.1973). Larry's testimony regarding his ownership of the subject equipment rebutted this presumption and was corroborated at trial by Joseph's testimony.

The Court disagrees with the Bank's conclusion that the documents admitted at trial conclusively prove that the subject equipment was acquired by Joe's Core and Machine and/or National Castings, and that the 1977 personal income tax return of Joseph and Sharon Kondik shows that National Castings depreciated the subject equipment. The Court was, and still is, unable to ascertain whether the equipment at issue is the same as that listed on the furnished income tax return of the Kondiks or on the equipment list of National Castings. *Compare* Larry's Exhibit No. 1 and Exhibit A to Complaint *to* Bank's Group Exhibit D. The Bank failed to elicit such testimony or demonstrate same at trial. Although Joseph and Sharon Kondik may have depreciated some of the equipment for income tax purposes, that does not conclusively prove that they or the Debtor, rather than Larry, owned the equipment. Same might be indicative of their previously claimed improper tax depreciation. In any event, the Court is unable to ascertain from the face and contents of the exhibits furnished by the Bank whether the equipment Larry claimed is the same equipment that was depreciated by the Kondiks on their personal income tax return.

 Additionally, the Bank asks, in light of the fact that it was not advised at the time of the loan that some of the equipment was not owned by the Debtor, how can it now submit any evidence that it would not have made the loan had it known of the true ownership of the collateral? The short answer is that the Bank had listed a Bank officer among its witnesses to testify at trial,

but for unknown tactical or other reasons, failed to call such witness to prove that but for Larry's silence, as well as the Debtor's representations through Joseph and Sharon, it would not have made the loan or lent as much to the Debtor had it known that Larry, not the Debtor, was the true owner of the subject equipment. It is the lack of such evidence, or something similar, that produced the end result here and the finding that the Bank failed to prove all elements for application of the doctrine of estoppel by silence as against Larry.

The Bank states that Larry's silence alone is sufficient to establish the first prong of the three elements cited by the Court—words or conduct that led the Bank to take certain action. The Bank argues that Larry had an affirmative duty to come forward in 1988, when the loan was made, to profess ownership of the property at issue. The Bank contends that his silence alone is enough to satisfy the first prong of the estoppel theory. The Bank argues that it was led to believe by the actions of Joseph and Sharon Kondik and the silence of Larry that the Debtor was the true owner of the subject equipment. The Court disagrees because the record is devoid of direct evidence to show how the Bank relied on Larry's silence and was thereby harmed to its detriment. The Court previously noted that Larry testified he may have alerted the Bank of his claim to the equipment. Thus, this absence of evidence from the Bank, notwithstanding Larry's silence, precluded the Bank's showing of the first element required for application of the doctrine.

■ The Bank's argument also misses the point under *In re Pubs, Inc. of Champaign*, 618 F.2d 432 (7th Cir.1980). An owner does not have to expressly deny that another lacks the right to encumber property. Rather, the owner must grant another the right to encumber property. Hence, the Debtor, through Sharon or Joseph Kondik, could not have properly encumbered Larry's property without his consent. The Court found that the evidence established that Larry did not give his consent to encumber his property as collateral security for the Bank's loan. The

Bank has failed to demonstrate that the Court made this finding in error.

Finally, the Bank argues that the third element of estoppel—the reliance must have caused harm to the party asserting the estoppel—was demonstrated by way of stipulation, namely, that the Bank is "woefully undersecured," because the proceeds already turned over to the Bank by the Chapter 7 Case Trustee have not paid the Bank in full, and the escrowed proceeds which form the basis of the instant dispute, if turned over to the Bank, will not satisfy the Bank's debt. Thus, according to the Bank, it has demonstrated harm. The Bank's ultimate undersecured position, after liquidation post-petition of its collateral base, is not the functional equivalent of proof of exactly what factors and evidence it relied on in 1988 when it made the decision to loan to the Debtor on a secured basis. Simply stated, no proof of reliance leads to a conclusion of no proof of harm.

The Court thus rejects the Bank's contention that the Bank established its reliance on Larry's silence. The fact that the Bank is undersecured and that the proceeds held by the Chapter 7 Case Trustee do not satisfy the Bank's debt do not establish the Bank's reliance vis a vis Larry concerning the subject equipment at the time of the loan in 1988. Absent any evidence offered at trial from some agent or officer of the Bank, or some documentary evidence from the Bank's file to establish the factors upon which it made the credit decision to lend, it is practically impossible for the Court to determine that the Bank in any way relied upon Larry's silence in deciding to make the loan to the Debtor. Moreover, the record and evidence before the Court indicates that the Bank was substantially undersecured in any event, excluding the sale value of the subject equipment. The liquidation of its remaining collateral base was insufficient to satisfy its accrued pre-petition claim for unpaid interest and principal, exclusive of costs and fees. That substantial undersecured position itself created the bulk of the Bank's loss on this loan of which the subject sale proceeds in dispute were a small portion.

## V. *CONCLUSION*

For the foregoing reasons, the Court hereby denies the Bank's motion.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

## *ORDER*

For the reasons set forth in a Memorandum Opinion dated the 12th day of May 1997, the Court hereby denies the motion of First State Bank of Pekin to reconsider.