874 F.2d 997
 9 UCC Rep.Serv.2d 1092
 In the Matter of John W. WHATLEY and Ruby L. Whatley,
Whatley Farms, Inc., Debtors.
U.S. SMALL BUSINESS ADMINISTRATION, Plaintiff-Appellant,
v.
GUARANTY BANK & TRUST COMPANY, Defendant-Appellee.
 No. 88-4474.
 United States Court of Appeals,
Fifth Circuit.
 June 7, 1989.
 
 Joyce A. Oblon, Office of Gen. Counsel, Small Business Admin., Washington, D.C., Patricia D. Rogers, Asst. U.S. Atty., Robert Q. Whitwell, U.S. Atty., Oxford, Miss., for plaintiff-appellant.
 Gretchen Pumphrey, Pat Scanlon, Bobby L. Dallas, Jackson, Miss., John W. Garrard, Montgomery, Varnado, Garrard & Trotter, Belzoni, Miss., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Mississippi.
 Before GARZA, JOLLY, and JONES, Circuit Judges.
 EDITH H. JONES, Circuit Judge:
 
 
 1
 In this lien priority dispute between competing creditors, two questions are at issue: whether the debtor Whatley Farms, Inc. is a corporation under Mississippi law and whether Whatley Farms, Inc. ever obtained rights in the collateral (in this case farming equipment) which it pledged as security to the Small Business Administration ("SBA"). If either question is answered in the negative, a subsequent lienholder Guaranty Bank & Trust Company (the "bank") will prevail. The bankruptcy court determined that the SBA, although first in time, did not have a valid security interest in the farming equipment. 51 B.R. 676. The district court affirmed. Concluding that the bankruptcy court erred as a matter of law, we REVERSE.
 
 FACTS
 
 2
 The facts are undisputed. On October 28, 1975, the Secretary of State of Mississippi issued a certificate of incorporation to the debtor, Whatley Farms, Inc. ("Whatley Farms"). John W. Whatley and his wife, Ruby G. Whatley were listed as the incorporators.[1] The certificate of incorporation and proof of publication were duly filed in the Office of the Chancery Clerk, Humphreys County.
 
 
 3
 The farming equipment used by the Whatleys in their agricultural operations was depreciated annually on the corporate tax return and considered by the corporation's accountant as a corporate asset from the inception of the corporation. No formal bill of sale ever transferred the equipment from the Whatleys to the corporation, however. Between 1976 and 1980, John Whatley purchased farming equipment in his personal name and financed such purchases with personal loans through Guaranty Bank. After its incorporation, Whatley Farms opened a corporate checking account with the Cleveland State Bank, Cleveland, Mississippi and used the account regularly in its business activities. The funds in this account were used for payment of obligations to Guaranty Bank on several occasions.
 
 
 4
 In 1981, the Whatleys relocated their farming business, including the farming equipment, from Humphreys County, in western Mississippi, across the state to Kemper County. On November 11, 1981, Whatley Farms borrowed $158,600.00 from the SBA and executed a security agreement and UCC-1 financing statement providing for a floating lien on all machinery and equipment excluding automotive, including, but not limited to, certain items of property described on a list appended to the UCC-1 financing statement. This statement was filed in Kemper County.
 
 
 5
 In April 1983 the Whatleys moved back to Humphreys County along with their farming equipment. On May 23, 1983 John Whatley obtained a personal loan from Guaranty Bank for which he granted the bank a security interest in much of the same farming equipment listed in the SBA's financing statement.[2] The bank's financing statement listed the farming equipment as belonging to John Whatley; it purported to cover "all equipment" of John Whatley's farming operations.
 
 
 6
 Significantly, at the time that these loans were made Mississippi did not require duplicate filings of the financing statements both in the county of residence and with the secretary of state. Filing in the county of residence was legally sufficient. The SBA's financing statement was thus properly filed under Mississippi law in Kemper County, but was never filed with the secretary of state. Likewise, the bank properly filed its financing statement only in Humphreys County. Both the bank and the SBA have acted in good faith.
 
 
 7
 On April 23, 1984, John W. Whatley and Ruby L. Whatley filed a voluntary Chapter 11 petition with the bankruptcy court. On June 5, 1984, Whatley Farms filed its voluntary Chapter 11 petition. A priority dispute arose between the SBA and Guaranty Bank. After the district court upheld the bankruptcy court's ruling in favor of Guaranty Bank, the bank sold the farming equipment for $48,176. Proceeds from the sale are in escrow pending the outcome of this case. From the adverse decisions of the bankruptcy and district courts, the SBA appeals.
 
 ANALYSIS
 
 8
 The bankruptcy court's logic is simple. Whatley Farms was not legally organized under the laws of Mississippi because it did not comply with certain corporate formalities. Not having a legal existence, Whatley Farms could not hold legal title to the equipment pledged to the SBA and never actually owned that equipment. The court therefore held that Whatley Farms could not grant a security interest in the equipment to the SBA because it was not a legal entity and did not own the equipment.
 
 
 9
 We disagree with each of these conclusions as follows: Whatley Farms, Inc. is a de facto corporation under Mississippi law. As such, it could own the farm equipment it continuously depreciated for tax purposes. But whether or not it owned the farming equipment, it had "rights in the collateral" sufficient to enable it to grant a security interest pursuant to Miss.Code Ann. Sec. 75-9-203. We will address Whatley Farms's corporate existence and then the validity of the SBA's security interest.
 
 I. DE FACTO CORPORATE STATUS
 
 10
 Mississippi law recognizes the concept of de facto corporations.[3] In Allen v. Thompson, 248 Miss. 544, 158 So.2d 503 (1963), the Mississippi Supreme Court established three necessary conditions for de facto corporate status: (1) a valid law under which the entity could be incorporated, (2) a bona fide attempt to organize a corporation under the law, and (3) an actual exercise of corporate powers.[4] Peculiarly, neither the bankruptcy court nor the district court applied Mississippi's test for de facto status to the facts of this case. The issue was not waived. Since the facts are undisputed, we may undertake the task ourselves in the interest of judicial economy.[5]
 
 
 11
 Sections 79-3-101 through 79-3-113 of the Mississippi Code, Miss.Code Ann. (1972), satisfy the first requirement,[6] that there be a law enabling the company to incorporate. At the time of Whatley Farms's incorporation, section 79-3-109 provided that:
 
 
 12
 Upon the issuance of the certificate of incorporation, the corporate existence shall begin, and such certificate of incorporation shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under this chapter, except as against this state in a proceeding to cancel or revoke the certificate of incorporation or for involuntary dissolution of the corporation.
 
 
 13
 The record also reflects a bona fide attempt to organize the corporation. No simple or talismanic test exists to determine whether a corporation has satisfied this condition. See 8 Fletcher, supra n. 3, Sec. 3796; 18A Am.Jur. 2D Corporations, Secs. 243-48. Rather, we must examine all of the pertinent facts. The test is neither complete performance nor even substantial compliance; however, there must be evidence of at least a colorable attempt to comply with the statutory requirements by taking some of the statutory steps toward incorporation. See 18A Am.Jur. 2D Corporations Sec. 244.
 
 
 14
 The bank argues that the following undisputed facts preclude a finding of de facto corporate status: (1) the failure to pay $1,000.00 into the corporation as initial paid-in capital and the related failure to issue any stock, as required by Miss.Code Ann. Sec. 79-3-111, (2) the failure to hold an initial organizational meeting of the board of directors, as required by Miss.Code Ann. Sec. 79-3-113, (3) the failure to adopt bylaws, and (4) the failure to hold annual shareholders' meetings. To this list may be added the absence of corporate bylaws or of signed minutes for any directors or shareholders' meetings.
 
 
 15
 On the other hand, Whatley Farms had corporate officers. John W. Whatley was president, Ruby Whatley held the dual positions of secretary and treasurer, and the Whatleys' son John served as vice-president. Whatley Farms also filed a certificate of incorporation with the proper authority, the Office of the Chancery Clerk for Humphreys County. Section 79-3-109, quoted above, indicates the critical significance of this fact. Under Mississippi law, such a filing is conclusive evidence that the necessary conditions precedent have been complied with, except as against a challenge brought by the state in a direct proceeding.[7]
 
 
 16
 Although there appears to be no Mississippi case precisely on point, we are confident that Mississippi would find a bona fide attempt to organize Whatley Farms, Inc. The facts relied upon by the bank, taken individually or collectively, do not refute our conclusion. First, the Mississippi statutes do not require that a corporation adopt bylaws. Section 79-3-51 states:
 
 
 17
 The initial bylaws of a corporation shall be adopted by its board of directors. The power to alter, amend or repeal the bylaws or adopt new bylaws shall be vested in the board of directors unless reserved for the shareholders by the articles of incorporation. The bylaws may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation.
 
 
 18
 Thus, section 79-3-51 authorizes the board of directors to adopt the initial set of corporate bylaws, but the statute does not require their adoption or indicate any penalty for this failure.
 
 
 19
 Likewise, Mississippi courts have held on several occasions that failure to comply with the paid-in capital requirement does not, of itself, preclude a finding of de facto corporate status. In Quinn v. Woods, 134 Miss. 621, 99 So. 510 (1924), the Home Securities Company began operating before twenty-five percent (25%) of the authorized capital stock had been issued and the monies paid into the corporate treasury.[8] At that time Mississippi law provided that "[a]ny corporation hereafter chartered ... is hereby authorized to begin business when so much as twenty-five (25%) per centum of the authorized capital stock shall have been paid into the treasury of the corporation...." The evidence indicated that a charter had been granted to the Home Securities Company, and a proper report was made to the secretary of state. The charter, however, was never filed for record in the county. The Mississippi Supreme Court held that the payment of twenty-five percent (25%) of the capital stock was a condition subsequent to the formation of the corporation and thus did not invalidate the corporate status of the Home Securities Company. Quinn drew a sharp distinction between conditions precedent and conditions subsequent. Where a statutory requirement for incorporation is a condition subsequent, failure to comply is less fatal to a finding of de facto status. Quinn v. Woods, 99 So. at 511. Accord Skarda v. Commissioner of Internal Revenue, 250 F.2d 429 (10th Cir.1957). This position was reaffirmed in Allen v. Thompson, 158 So.2d 503, and In re Estate of Hardin, 218 So.2d 889 (Miss.1969).
 
 
 20
 In a similar vein, the Mississippi Supreme Court has held that a corporation's failure to comply with its own bylaws does not necessarily imperil the corporate existence. In Smith v. Natchez Steamboat Co., 1 How. (2 Miss.) 479 (1837), the court held that neither the failure to hold shareholders' meetings as required in the bylaws, nor the additional failure to elect officers at times specified in the bylaws, would require the dissolution of the corporation. In fact, Miss.Code Ann. Sec. 79-3-53 (1972) specifically states that "[f]ailure to hold the annual meeting at the designated time shall not work a forfeiture or dissolution of the corporation."
 
 
 21
 In analyzing the facts of this case, we are mindful that
 
 
 22
 [s]ubstantial compliance with the [incorporation] statutes is not necessarily required for de facto corporate existence. There must, however, be at least a colorable compliance with statutory requirements by taking some of the statutory steps.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 The nature and character of the informality or defect is immaterial so far as de facto existence is concerned, provided, notwithstanding such defect, it is apparent that there was an attempt in good faith to create a corporation and that in like good faith there has been an assumption and exercise of corporate functions.
 
 
 26
 18A Am.Jur. 2D Corporations Sec. 244. The efforts to incorporate here are similar to those in Skarda v. Commissioner of Internal Revenue, 250 F.2d 429 (10th Cir.1957). There the individuals filed articles of incorporation with the New Mexico State Corporation Commission and received a certificate of incorporation, which they duly filed. The entity, known as the Chronicle Publishing Company, was treated as a corporation for accounting purposes; evidence showed complete accounting books had been established. The entity also established a corporate checking account. Regular corporate tax returns were filed. According to the court, "[t]here were no meetings of stockholders of the corporation, it adopted no bylaws, no officers were formally elected, no minute books were kept, no corporate stock was issued and no property was formally transferred by the partnership to the corporation." Skarda, 250 F.2d at 432. Nevertheless, the Tenth Circuit held that the Chronicle Publishing Company was a valid corporation, at least for tax purposes.
 
 
 27
 We conclude that Whatley Farms attempted in good faith to incorporate and has therefore satisfied its requirement under the second prong of the test for de facto corporate status.
 
 
 28
 The third prong of the test is whether Whatley Farms actually exercised corporate powers. "The signing of a certificate of incorporation, though an element to be considered, does not create a de facto corporation, unless, after that step is taken, the incorporators do an act which shows that they are using corporate powers they have attempted to assume." 18A Am.Jur.2D Sec. 247. Fletcher, Cyclopedia of Corporations, states:
 
 
 29
 User of corporate powers may be shown by proof that the association elected officers or held meetings as a corporate body, that it maintained an office, or that it transacted business in a way which imports that it was acting as a corporation. User may be proved either by the production of written instruments executed by the corporation, or other corporate acts, or by parol evidence of the exercise of corporate powers. Proof of the actual exercise and enjoyment of the corporate powers and functions of a corporation, where there is no countervailing proof, is sufficient proof of user, as is general reputation, it has been held. On the question of user, evidence of members that the association claimed to be a corporation and that they never claimed or informed the plaintiff that the association was a partnership is admissible. On the other hand user cannot be proved by statements in the nature of conclusions, nor by mere opinions; and it has been held that the mere fact that an association did business under a corporate name does not show user, since it is equally consistent with existence as a partnership.
 
 
 30
 Fletcher, supra n. 3, Sec. 4142 at 559.
 
 
 31
 The bankruptcy court found that Whatley Farms's corporate minute book contained unsigned minutes for a special board of directors meeting in April 1976 and a resolution of the stockholders and directors dated May 24, 1984. In addition, a resolution dated November 11, 1981 authorized the corporation to apply to the SBA for a loan not to exceed $158,600.00 and to pledge the corporate assets as security for the loan. Whatley Farms continuously filed corporate tax returns and did business through a corporate bank account. As far as can be determined, John W. Whatley and his family continued to be officers of the company. The test for user must be applied in light of the particular circumstances of each case. We are persuaded that, despite their spotty compliance with corporate formalities, the Whatleys "used" Whatley Farms's corporate existence sufficiently to justify its status as a de facto corporation.[9]
 
 II. MISSISSIPPI CONSTITUTION
 
 32
 The bank also argues that the Whatleys failed to organize Whatley Farms as a corporation within the time period allotted under Art. VII, Sec. 180 of the Mississippi Constitution.[10] This failure, according to the bank, terminates the legal existence of the corporation. We have found no case addressing the proper use of Sec. 180. Nevertheless, to the extent that the bank is asserting that Sec. 180 precludes a finding of de facto corporate status, this argument is plainly wrong because Mississippi courts do recognize a de facto corporation. Even without divining the exact meaning of Sec. 180, one aspect of the section is apparent: Sec. 180 is not self-executing. The state would have to bring a proceeding against Whatley Farms for failure to comply with Sec. 180, which of course did not occur here. Therefore, even if Whatley Farms was in violation of Art. VII, Sec. 180 of the Mississippi Constitution, Whatley Farms's corporate status cannot be collaterally attacked by the bank.
 
 III. RIGHTS IN THE COLLATERAL
 
 33
 The bankruptcy court found that, "There is no evidence in writing of a bill of sale, deed, or other instrument, except for book entries made by the corporate accountant in the depreciation schedules established for the corporation, that any personal property of any kind was ever lawfully transferred into the corporation by John W. Whatley, Ruby G. Whatley, or any other person, firm, or legal entity." The court accordingly determined that Whatley Farms could not pledge the farm equipment because it did not own the equipment. We find the analysis more complex.
 
 
 34
 Mississippi's enactment of the Uniform Commercial Code sets forth the requirements necessary for a valid security interest in Mississippi. A security interest does not arise unless (1) the debtor has signed a security agreement containing a description of the collateral, (2) value has been given, and (3) the debtor has "rights in the collateral." Miss.Code Ann. Sec. 75-9-203. The first question before us is whether Whatley Farms had rights in the farming equipment pledged as collateral to the SBA.
 
 
 35
 The bankruptcy court erred in equating a debtor's rights in the collateral with its possession of legal title. The Uniform Commercial Code does not equate the two concepts; they are not the same, and the distinction is crucial to our decision. A debtor need not have legal title to equipment in order to grant a creditor a security interest. See, e.g., Matter of Samuels & Co., Inc., 526 F.2d 1238 (5th Cir.1976) (en banc). Although one cannot generally encumber another's property, several exceptions have long been recognized. Consent by the property owner constitutes one such exception. See In re Pubs, 618 F.2d 432, 436 (7th Cir.1980). This case presents a classic example of consent.
 
 
 36
 John Whatley signed the corporate resolution authorizing the corporation to submit a loan application to the SBA and to pledge its corporate assets as security. More importantly, the SBA's security agreement and financing statement bear the signature of "John W. Whatley, on behalf of Whatley Farms." The financing statement specifically identifies and lists the farming equipment piece by piece as pledged collateral. Assuming, therefore, that the bank is correct in its contention that John Whatley actually owned the farming equipment, by signing the corporate borrowing resolution and security agreement, John Whatley consented to the corporation's pledge of the farming equipment.[11] The corporation accordingly had sufficient rights in the collateral irrespective of outright ownership.
 
 
 37
 Our decision is consistent with the Eleventh Circuit's opinion in In re Atchison, 832 F.2d 1236 (11th Cir.1987), which examined the validity of a security agreement granted by a corporation. Estil Atchison, as an officer and shareholder of the corporation, executed a chattel mortgage running from the corporation to Merchants Bank. Later, having filed a Chapter 7 bankruptcy petition, Atchison claimed that the mortgage was invalid because the pledged property belonged to him personally. The court in Atchison disagreed with the debtor, stating that "all of the courts that have considered the question have ruled that an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest [citations omitted]." 832 F.2d at 1239. Since Atchison himself signed the mortgage on behalf of the corporation, the court held, "his signature for [the corporation] was sufficient to infer his consent to [the equipment's] use as collateral." As the Tenth Circuit has observed, the UCC was designed, in part, to prevent hidden-title subterfuge in which the true owner of collateral, by permitting another party to exercise an outward appearance of ownership, could deceive third-party creditors to their detriment. See Kinetics Technology Int'l Corp. v. Fourth Nat. Bank, 705 F.2d 396, 399 (10th Cir.1983). Adopting the bank's position would revive the possibility of such subterfuge.
 
 
 38
 The bank also contends that the SBA's security agreement is defective. According to the bank, Sec. 75-9-203(1)(a) requires that the actual owner of the collateral sign the security agreement when the debtor and the owner of the collateral are not the same person.[12] The bank draws support for its argument from Miss.Code Ann. Sec. 75-9-105 (1972), which states in pertinent part:
 
 
 39
 (1) In this chapter unless the context otherwise requires:
 
 
 40
 (d) "Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the chapter dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires;
 
 
 41
 (emphasis added). At least one court has adopted the bank's view. Northwest Bank v. First Va. Bank of Damascus, 585 F.Supp. 425 (W.D.Va.1984).
 
 
 42
 We cannot agree with the bank, however. The definitions in Sec. 75-9-105 are specifically qualified by the phrase "unless the context otherwise requires" in Subsection (1). The context of Sec. 75-9-203 does just that. Were we to construe the term "debtor" to mean "owner of the collateral," the section's third requirement, that the debtor have rights in the collateral, would be rendered meaningless. As our earlier discussion indicates, the third requirement covers a broader class of debtors than the actual owners of collateral. The term "debtor" appears three times in Subsection (1) of Sec. 75-9-203. General principles of statutory construction require us to interpret the same word consistently within the same subsection absent an express change to the meaning in the subsection itself. Therefore we must conclude that the drafters of the code did not intend to require the owner of the collateral to sign the security agreement. Rather the debtor must sign the agreement and have rights in the collateral.
 
 
 43
 The bank did not contest the validity of the SBA's financing statement. We note in passing that Miss.Code Ann. Sec. 75-9-402 requires the financing statement to contain the name and signature of the debtor. Some courts have held that under this section, the financing statement must contain the name of the owner of the collateral when the debtor and the owner are not the same. The purpose for the owner's signature on the financing statement is to protect searching creditors from being misled as to prior encumbrances on the debtor's property. Thus, although all parties must comply with all requirements of Sec. 75-9-402 to perfect the security interest, Sec. 75-9-402(8) specifically excuses minor errors which are not "seriously misleading." Section 75-9-402(8) was designed to ensure that minor mistakes which would not mislead creditors in their search for prior financing statements would not defeat otherwise valid financing statements. Compare Avco Delta Corp. Canada Ltd. v. United States, 459 F.2d 436 (7th Cir.1972) (financing statement filed under Canadian Parkhill Construction Equipment but Canadian Parkhill Pipe Stringing, Inc. actually owned the collateral) and In re Dwares, 6 B.R. 335 (D.R.I.1980) (name "Industrial National Bank" used as debtor's name, instead of actual name: "Industrial National Bank of Rhode Island") with White Star Distributors v. Kennedy, 66 A.D.2d 1011, 411 N.Y.S.2d 751 (1978) (Scheuerle but not Jerge, true owner of collateral, listed in financing statement) and K.N.C. Wholesale, Inc. v. AWMCO, Inc., 56 Cal.App.3d 315, 128 Cal.Rptr. 345 (1976) (financing statement listing JAPE as debtor did not contain any reference to AWMCO, the actual owner of the collateral). The indexing of financing statements is tied to the name of the debtor. These cases are not inconsistent with our previous conclusion that Whatley's signature, even though perhaps executed in the wrong capacity, was sufficient to bind him to the security agreement with SBA. The security agreement is a document governing only the borrower and lender, while a financing statement must provide notice to the world.
 
 CONCLUSION
 
 44
 To summarize, we hold that Whatley Farms was a de facto corporation under Mississippi law. Furthermore Whatley Farms had sufficient rights in the collateral such that it was capable of granting a security interest in the farming equipment to the SBA. We therefore REVERSE the judgment of the district court, affirming the bankruptcy court, which rejected the SBA's claimed priority lien in the farming equipment.
 
 
 
 [1]
 The Whatleys were not sophisticated in setting up a corporation and relied heavily on their accountant for advice
 
 
 [2]
 This is the only Guaranty Bank obligation that is in issue. Earlier loans to Whatley personally when he purchased equipment were fully repaid
 
 
 [3]
 Some states, upon the adoption of the Model Corporation Act, have abandoned the concept of de facto corporations. See 8 Fletcher, Cyclopedia of Corporations, Sec. 3762.1 (1982); 18A Am.Jur. 2D Corporations Sec. 241 (1985); H. Henn & J. Alexander, Laws of Corporations Sec. 140 (3d ed.1983). See, e.g., Timberline Equipment Co. v. Davenport, 267 Or. 64, 514 P.2d 1109 (1973) (de facto doctrine no longer exists). SBA argues that evidence of Whatley Farms's certificate of incorporation should be conclusive proof of corporate existence in Mississippi. This may be true, but no Mississippi case directly supports that proposition. Because we conclude that Whatley Farms is at least a de facto corporation, we need not address how definitive a certificate of incorporation may be
 
 
 [4]
 Generally, a de facto corporation possesses all of the powers and rights (as well as the duties and liabilities) of a de jure corporation. The most significant distinction between the two is that the status of a de facto corporation is subject to a direct challenge by the State
 
 
 [5]
 Guaranty Bank argues that the decisions of the bankruptcy and district courts were based solely on findings of fact, and that we must therefore review under the clearly erroneous standard. Whether Whatley Farms, Inc. was a validly existing corporation is, however, a question of law rather than fact. See Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (courts of appeal are to make distinctions between questions of law and questions of fact, as difficult as this task may be)
 
 
 [6]
 Mississippi has subsequently repealed Secs. 79-3-109 through 79-3-117 effective January 1, 1988. Our decision is based on the Mississippi statutes then applicable
 
 
 [7]
 The Model Corporation Act suggests a preference for holding certificates of incorporation to be conclusive evidence of incorporation. See Model Business Corp. Act Sec. 56 (1977). See also, S. FitzGibbon & D. Glazer, Legal Opinions on Incorporation, Good Standing and Qualification To Do Business, 41 Bus. Law. 461 (1986). See 8 Fletcher, supra, Sec. 3762.1 ("the provision which establishes corporate existence by the filing of the certificate largely supersedes the necessity of resorting to the common law doctrines of de facto corporations ... where there is some defect or irregularity in the incorporation papers or proceedings leading up to the issue of the certificate")
 
 
 [8]
 It is unclear whether the twenty-five percent (25%) of authorized capital was ever paid into the corporate treasury
 
 
 [9]
 This is not a case involving the doctrine of piercing the corporate veil. That equitable doctrine is not appropriate or applicable to a standard dispute over the priority of liens. See, e.g., H. Henn & J. Alexander, supra n. 3, Sec. 146. The corporate veil may occasionally be pierced where the provisions of applicable incorporation statutes have been literally satisfied. The doctrine is most frequently applied to circumvent the limited liability that the shareholders would otherwise enjoy
 
 
 [10]
 Section 180 provides:
 All existing charters or grants of corporate franchise under which organizations have not in good faith taken place at the adoption of this Constitution shall be subject to the provisions of this article; and all such charters under which organizations shall not take place in good faith and business be commenced within one year from the adoption of this Constitution, shall thereafter have no validity; and every charter or grant of corporate franchise hereafter made shall have no validity, unless an organization shall take place thereunder and business be commenced within two years from the date of such charter or grant.
 
 
 [11]
 The parties also disagree as to whether certain testimony of John Whatley should have been excluded. The bankruptcy court admitted the testimony and in its decision stated, "The testimony of Mr. Whatley must be given careful consideration in the resolution of this dispute. It is important to remember that [Whatley] is individually liable on each of the two loans. Mr. Whatley stated unequivocally that he thought that the machinery and equipment belonged to him rather than to the corporation and that it was his intention to grant an exclusive lien to Guaranty Bank when he entered into the loan transaction in May, 1983." We agree with the SBA that this testimony should have been excluded under the parol evidence rule. See Kimbell Foods, Inc. v. Republic Nat'l Bank, 557 F.2d 491 (5th Cir.1977), aff'd sub nom. United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). When the written instruments are clear and unambiguous, parol testimony is inadmissible, and the documents themselves will stand to evidence the parties' intent. Barnett v. Getty Oil Co., 266 So.2d 581 (Miss.1972)
 
 
 [12]
 We may assume that the bankruptcy court's finding that the corporation did not own the equipment is not clearly erroneous