# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00650-CV

**Agustin Zurita and AZ Restaurant Ventures, LLC, Appellants**

**v.**

**SVH-1 Partners, Ltd., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-003768, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

SVH-1 Partners, Ltd. ("the Landlord") sued Agustin Zurita for breach of a commercial lease; AZ Restaurant Ventures, LLC ("AZR") intervened and filed claims against the Landlord for conversion and tortious interference. After a bench trial, the trial court rendered judgment against Zurita on the Landlord's breach-of-contract claim and against AZR on its conversion and tortious-interference claims. The judgment awarded the Landlord damages, pre- and post-judgment interest, and attorneys' fees, and held Zurita and AZR jointly and severally liable for the attorneys' fee award. The trial court also concluded that it lacked jurisdiction to consider Zurita's and AZR's requests for declarations regarding the existence and priority of liens on certain restaurant equipment AZR had purchased with financing from a third party. In four issues, AZR and Zurita contend that the trial court erred in (1) rendering judgment that AZR take nothing on its conversion claim; (2) concluding that it lacked jurisdiction over Zurita's and AZR's requests for declaratory

relief; (3) holding Zurita and AZR jointly and severally liable for attorneys' fees awarded to the Landlord; and (4) making certain procedural rulings that were arbitrary and capricious and denied them a fair trial. We will modify the trial court's judgment and, as modified, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Landlord owns the Sunset Valley Homestead Shopping Center located in Austin. In March 2007, the Landlord and Zurita executed a commercial lease for approximately 3,000 square feet of space in the shopping center. The lease provided that "Tenant will use the Premises to operate a restaurant whose primary business is a sandwich bar." Because Zurita intended to operate the restaurant through a separate entity that had not yet been formed, the lease included a provision setting forth the Landlord's consent to a "one-time" assignment of the lease, to be executed before the date the leased premises were deemed by the Landlord to be ready for occupancy, to an entity created to operate the restaurant and "whose managing principal is Agustin Zurita." After the lease was signed, Zurita formed Z & P Sunset Valley Food but failed to execute an assignment of the lease to that entity prior to the date on which the premises were ready for occupancy. Consequently, Zurita remained the tenant on the lease.

The lease also granted the Landlord a lien on certain personal property located on the premises:

> LANDLORD SHALL HAVE AND TENANT HEREBY GRANTS TO
> LANDLORD A CONTINUING SECURITY INTEREST FOR ALL RENTALS
> AND OTHER SUMS OF MONEY DUE OR TO BECOME DUE HEREUNDER
> FROM TENANT, UPON ALL GOODS, WARES, EQUIPMENT, FIXTURES,
> FURNITURE, INVENTORY, ACCOUNTS, DOCUMENTS, GENERAL
> INTANGIBLES, CHATTEL PAPER, DEPOSIT ACCOUNTS, DOCUMENTS,

2

INSTRUMENTS, INVESTMENT PROPERTY AND OTHER PERSONAL PROPERTY OF TENANT NOW OWNED OR HEREAFTER ACQUIRED (COLLECTIVELY "COLLATERAL") AND SITUATED (OR DOCUMENTS EVIDENCING SUCH COLLATERAL KEPT) ON, AT, OR WITHIN THE PREMISES, WHICH IS LOCATED AT **Sunset Valley Homestead Shopping Center, SEC Hwy 290 and Brodie Lane, Austin, Texas.** . . . THIS SECURITY AGREEMENT AND FINANCING STATEMENT ALSO COVERS FIXTURES LOCATED AT THE PREMISES DESCRIBED IN <u>EXHIBIT A</u> AND <u>EXHIBIT B</u> ATTACHED HERETO, AND MAY BE FILED FOR RECORD IN THE REAL ESTATE RECORDS FOR THE COUNTY IN WHICH THE PREMISES ARE LOCATED.

Exhibits A and B provided specific descriptions of the premises leased by Zurita. Pursuant to this provision, in the event of Zurita's default under the lease, the Landlord would have all rights and remedies of a secured creditor under the Uniform Commercial Code, including the right to sell the property subject to the security interest granted by Zurita. *See* Tex. Bus. & Com. Code Ann. §§ 9.101-.709 (West 2011). When Zurita signed the lease granting the security interest, the leased premises were unfinished, and no equipment, fixtures, furniture, or other items were located there.

At trial, Zurita testified that after the premises were ready for occupancy, AZR purchased the restaurant equipment and furnishings. In connection with this purchase, AZR entered into financing agreements with US Bancorp. AZR is a limited liability company formed in 2006 and owned solely by Zurita. According to Zurita, AZR had legal title to the equipment and furnishings located in the leased premises, and US Bancorp had a purchase money security interest in the financed items.

The ten-year lease term commenced in September 2007. In January 2008 Zurita began defaulting on rent payments. In June 2008 Zurita sent a letter to the Landlord informing it that he had decided to close the restaurant. The next day, the Landlord sent Zurita a letter informing him

3

that, due to his default in paying rent, and because he had given notice that he was vacating the leased premises, it was exercising its right to terminate Zurita's right to possession of the premises. Thereafter, the Landlord informed Zurita in writing that, if he failed to pay the balance due for unpaid rent, it intended to proceed with disposition of the contents of the leased premises, claiming a security interest in that property pursuant to the terms of the lease. Through his counsel, Zurita requested that no action be taken until counsel had an opportunity to investigate the facts and expressed a particular concern that the items the Landlord claimed a security interest in were subject to a subordination agreement in favor of US Bancorp. During the parties' subsequent settlement negotiations, which failed, counsel for Zurita learned that there was no subordination agreement covering the contents of the leased premises. The Landlord gave notice of a November 13, 2008 public sale and disposition of collateral, including all non-affixed contents of the leased premises. The letter also stated that "[a]ll fixtures have reverted to the Landlord in accordance with the law." At the sale, one of Zurita's business associates bid $50,000 for the property, but later withdrew the bid. Consequently, the Landlord's opening bid of $25,000 was the winning bid. The Landlord credited the $25,000 against Zurita's debt to it under the lease.

The Landlord filed its original petition against Zurita on October 17, 2008 alleging breach of the lease and seeking damages for past-due rent payment, various expenses, late fees, and other charges. Zurita filed a general denial and requested a declaration that US Bancorp had a lien on personal property that was superior to the Landlord's. Zurita also filed counterclaims for: (1) conversion, based on his assertion that AZR held legal title to the property, and consequently the security interest granted to the Landlord by Zurita had not attached to the property sold; (2) tortious

4

interference with a contractual relationship between US Bancorp and AZR; (3) violation of a right to redeem, based on the Landlord's alleged refusal to accept Zurita's offer to pay his debt to the Landlord, including attorneys' fees; and (4) common law fraud, based on allegedly false representations Zurita claimed the Landlord made in connection with Zurita's attempts to redeem the property. Zurita later added a counterclaim for "failure to mitigate."

In April 2009 AZR filed a plea in intervention seeking a declaration that it had legal title to the property sold and that the Landlord had no valid lien on that property. AZR also asserted causes of action for: (1) conversion, based on the Landlord's allegedly unlawful foreclosure and sale of the property at public auction; and (2) tortious interference with a contractual relationship between AZR and US Bancorp.

The trial court subsequently granted the Landlord's motion for summary judgment on Zurita's liability for breach of the lease. The court also ordered that the Landlord recover from Zurita its damages and attorneys' fees in amounts to be determined by the factfinder. In his third amended answer, Zurita dropped his request for declaratory relief and all previously asserted counterclaims. This amended answer contained only Zurita's general denial, an affirmative defense that the Landlord failed to mitigate its damages, and a request for attorneys' fees.

After a bench trial, the trial court awarded the Landlord $284,838.80 against Zurita on the breach-of-contract claim. The court rendered judgment against AZR on its conversion and tortious interference claims. The court denied the Landlord's claim for reverse veil-piercing against Zurita and AZR. The court reduced the amount of actual damages awarded to the Landlord for Zurita's breach of the lease agreement by $25,000 due to its conclusion that the Landlord failed to

5

properly conduct a foreclosure under Uniform Commercial Code article 9 but also found that the foreclosure sale did serve to pass title to the property despite the defect. The order also held Zurita and AZR jointly and severally liable for $85,000 in attorneys' fees awarded to the Landlord. After rendering judgment, the trial court filed findings of fact and conclusions of law. This appeal followed.

## DISCUSSION

In their first issue, Zurita and AZR challenge the trial court's judgment against AZR on its conversion claim. They assert that the record conclusively demonstrates that AZR, not Zurita, had legal title to the property the Landlord foreclosed on and sold at public auction, that Zurita could not have granted the Landlord a security interest in the property the Landlord sold, and that the Landlord's disposition of AZR's property was therefore wrongful. As demonstrated by the findings of fact and conclusions of law detailed below, the trial court determined that the Landlord's foreclosure and sale of the property was not wrongful, and therefore did not constitute conversion, because Zurita could and did grant to the Landlord a security interest in the property located within the leased premises to secure payment for rent and other sums due under the lease:

FOF 9: Zurita granted a continuing security interest in all of the personal property situated on, at, or within the premises to [the Landlord] to secure payment for rent and other sums due under the lease.

FOF 10: On October 30, 2007, [the Landlord] filed a UCC Financing Statement with the Texas Secretary of State. Zurita was named as the debtor.

6

| FOF 11: | On November 28, 2007, [the Landlord] filed a UCC Financing Statement in the Real Estate Records of Travis County, Texas. Zurita was named as the debtor. |
|---|---|
| FOF 26: | Zurita and [AZR] each claim that [AZR] was the owner of all of the items that were to be sold on November 12, 2008. |
| FOF 27: | Even if [AZR] held legal title to the collateral, Zurita continued to have rights in the collateral through his possession and use of the collateral in the restaurant, and by virtue of his 100% control of [AZR], the purported owner of the collateral. |
| FOF 44: | [The Landlord] acted in furtherance of its own contractual rights to proceed with the repossession and disposition of its collateral. |
| COL 3: | Zurita had the authority to grant the security interest which attached in the manner required by Section 9.203 of the Business and Commerce Code. Full ownership of the collateral is not required. |
| COL 4: | [The Landlord] perfected its security interest as required by Sections 9.501(a)(2) and 9.501(a)(1)(B) of the Business and Commerce Code. |
| COL 8: | Because it lawfully took possession of the collateral, [the Landlord] did not convert any property of Zurita or [AZR]. |

Zurita and AZR's first issue challenges these findings of fact and conclusions of law. We review a trial court's conclusions of law de novo and will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). What otherwise might be a question of fact becomes one of law when the fact is not in dispute or is conclusively established. *See Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.* We review a trial court's

findings of fact for legal and factual sufficiency of the evidence using the same standards applied to a jury verdict. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

A party alleging conversion must show that: (1) it owned, possessed, or had the right to immediate possession of personal property; (2) the defendant wrongfully exercised dominion or control over such property; and (3) the owner suffered injury. *See Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997); *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997); *Khorsid, Inc. v. Christian*, 257 S.W.3d 748, 759 (Tex. App.—Dallas 2008, no pet.). The parties here do not dispute that AZR had legal title to the property or that the Landlord exercised dominion or control over it. The dispute is whether the Landlord's conduct was wrongful.

### Was the Landlord's disposition of the property wrongful?

The Landlord asserted, and the trial court agreed, that its disposition of the property was lawful because it was exercising its rights as a secured creditor with a perfected security interest in the property. Zurita and AZR, on the other hand, contend that the Landlord did not have a valid security interest in the property because (1) Zurita had no power to grant the Landlord a security interest in property owned by AZR, and (2) by its terms, the granting language limited the security interest to property *owned by Zurita*. The security agreement plainly granted the Landlord a security interest in property "owned or hereafter acquired" by Zurita, and located in the leased premises. Zurita and AZR assert that the security interest therefore attached only to property to which Zurita held or acquired legal title. We disagree.

For a security interest to attach to the collateral, the debtor must have "rights in the collateral *or the power to transfer rights in the collateral to the secured party*." Tex. Bus. & Com.

8

Code Ann. § 9.203(b)(2) (emphasis added). As a general rule, a security interest attaches only to whatever rights the debtor may have in the collateral, broad or limited as those rights may be. However, comment 6 to section 9-203 observes that the italicized phrase accommodates exceptions to the general rule that "enable a debtor to transfer, and a security interest to attach to, greater rights than the debtor has." *Id.* cmt. 6. Such an exception exists here. It is undisputed that Zurita is the sole owner of AZR. Consequently, he had the power to transfer rights in property to which his company, AZR, held legal title.

With respect to AZR and Zurita's contention that the language of the Landlord's lien itself does not cover property to which Zurita does not have legal title, we note that the provision purports to grant a security interest in property Zurita "owned or hereafter acquired." We do not agree that this granting language limits the collateral subject to the security interest to only those items to which Zurita had legal title. The Uniform Commercial Code does not equate a debtor's rights in collateral with its possession of legal title. *See In re Whatley*, 874 F.2d 997, 1004 (5th Cir. 1989) (holding bankruptcy court erred in equating debtor's rights in collateral with its possession of legal title and observing that "[t]he Uniform Commercial Code does not equate the two concepts; they are not the same"). A debtor need not have legal title to equipment in order to grant a creditor a security interest. *Id.* (citing *Matter of Samuels & Co., Inc.*, 526 F.2d 1238 (5th Cir. 1987) (en banc)). While the Uniform Commercial Code does not define the term "rights in the collateral," it is generally recognized that legal title is not required and that rights in the collateral may be sufficient if the true owner consents to the debtor's use of the collateral as security, or if the true owner is estopped from denying the creation of the security interest because he has allowed another

9

to appear as the owner, or as having full power of disposition over the property, so that an innocent person is led into dealing with such apparent owner. *See, e.g.*, *In re Pubs, Inc. of Champaign*, 618 F.2d 432, 437-38 (7th Cir. 1980) (applying Illinois law).[1] Although we have found no Texas cases directly on point, "all of the courts that have considered the question have ruled that an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest." *In re WL Homes, LLC*, 452 B.R. 138, 142 (Bankr. D. Del. 2011) (citing *Merchants Bank v. Atchison*, 832 F.2d 1236, 1239 (11th Cir. 1987)); *see also Franklin Bank v. Tindall & Co.*, 2008 U.S. Dist. LEXIS 27765, at *18 (E.D. Mich. Apr. 7, 2008). Here, the landlord's lien specifically identifies that it attaches to "all goods, wares, equipment fixtures, furniture, inventory, accounts, documents, instruments, investment property, and other personal property" that Zurita owns or hereafter acquires and that are located at the leased premises. Because the UCC does not equate ownership rights sufficient to convey a security interest with legal title, Zurita had sufficient rights in the collateral to "own" it for purposes of granting a security interest, and the description of the collateral contained in the lease provision purports to grant to the Landlord a security interest in all such property. This conclusion is consistent with the purposes and goals of the Uniform Commercial Code, which was designed, in part, "to prevent hidden-title subterfuge in which the true owner of collateral, by permitting another party to exercise an outward appearance

---

[1] The Uniform Commercial Code should be construed to promote uniformity with other jurisdictions. *See* Tex. Bus. & Com. Code Ann. § 1.103(a)(3) (West 2009) (provisions of Texas Uniform Commercial Code must be construed "to make uniform the law among the various jurisdictions"); *1/2 Price Checks Cashed v. United Auto Ins. Co.*, 344 S.W.3d 378, 391 (Tex. 2011) (citing *In re King-Porter Co.*, 466 F.2d 722, 732 (5th Cir. 1971)); *see also* Tex. Gov't Code Ann. § 311.028 (West 2005) ("A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it.").

of ownership, could deceive third-party creditors to their detriment." *Kinetics Tech. Int'l Corp. v. Fourth Nat'l Bank*, 705 F.2d 396, 399 (10th Cir. 1983). We conclude that the security interest granted to the Landlord was not strictly limited to the property to which Zurita held legal title. Rather, the security interest also covered the equipment, fixtures, furniture, inventory, and similar items located on the leased premises that Zurita had the authority to pledge as security under section 9.203. This included the property to which AZR, an entity owned solely by Zurita, held legal title and which was located at the leased premises. We overrule the first appellate issue.

***Did the trial court have jurisdiction over the requests for declaratory relief?***

In their second issue, Zurita and AZR contend that the trial court erred by concluding that it lacked jurisdiction over their requests for declaratory relief and therefore refusing to address those claims. The record reflects that, by the time of trial, Zurita had abandoned any claim for declaratory relief.[2] AZR's live pleading, however, requested a declaration that it owned the foreclosed-on property and that US Bancorp's purchase-money security interest was superior to the Landlord's lien. The trial court concluded that the Landlord lawfully repossessed and disposed of the property, thereby effectively denying AZR's request for a declaration that it owned the property. With respect to AZR's request that the court declare that US Bancorp had rights in the property superior to the Landlord's, the trial court's findings of fact and conclusions of law include the following:

---

[2] Zurita's third amended answer and verified denial, filed on January 15, 2010, does not include a request for declaratory judgment. This pleading contains only a general and verified denial and sets forth as an affirmative defense that the Landlord failed to mitigate its damages.

11

FOF 42:    Because Zurita and [AZR] failed to join or retain other parties who may have or claim an interest in the collateral, the court cannot make any declaration regarding their interests. These parties include U.S. Bancorp (USB), Coactive Capital Partners, LLC, American Equipment, and Tarka. The only documentation provided from these entities showed, at most, a possible purchase money security interest in computers and related equipment, not one in restaurant furniture, fixtures, and non-computer equipment. None of these potential lean [sic] holders sought to intervene to prove and protect any potential security interest, if one existed.

COL 18:    Because Zurita and [AZR] failed to join USB or retain Tarka as parties, the court lacked jurisdiction to adjudicate the priority of claims to the collateral, or the rights to possession of such collateral. When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. V.T.C.A., Civil Practice & Remedies Code § 37.006(a).

COL 19:    If the court did render a declaratory judgment for [AZR], it would be an impermissible advisory opinion only. An advisory opinion decides an abstract question of law without binding the parties. The court lacks subject matter jurisdiction to do so.

The trial court concluded that it could not make a declaration of the rights of an entity that was not a party to the suit. This was not error. When declaratory relief is sought, "all persons who have or claim any interest that would be affected by the declaration must be made parties." Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) (West 2008). The statute mandates joinder of persons whose interests would be affected by the judgment. *See Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 697 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also* Tex. R. Civ. P. 39 (governing joinder of persons needed for just adjudication). The purpose of this provision is to avoid a multiplicity of suits, since a declaratory judgment does not prejudice the rights of a person not a party to the proceeding. *See Dahl v. Hartman*, 14 S.W.3d 434, 436 (Tex. App.—Houston [14th

12

Dist.] 2000, pet. denied). AZR's failure to join USB as a party contradicted the statute's directive that, when seeking declaratory relief, joinder of all persons with an interest that would be affected by the declaration is required.

Zurita and AZR rely on *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004), to support their contention that the trial court's conclusion that their failure to join US Bancorp deprived the court of jurisdiction over the request for declaratory relief was erroneous. In *Brooks*, a group of property owners sought a declaration regarding their homeowners' association's right to increase annual assessments and impose late fees. The homeowners' association covered six Harris County subdivisions, each of which was governed by a separate set of deed restrictions. The plaintiffs included property owners from four of the six subdivisions, but none from the remaining two. The supreme court concluded that the absence of *some* of the homeowners from the represented subdivisions did not deprive the court of jurisdiction to declare the rights of *all* property owners *from those subdivisions*. The court then considered whether there was jurisdiction to declare the rights of property owners from the subdivisions that had *no* representative homeowners as parties to the proceeding. The court stated:

> A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy. A judicial decision reached without a case or controversy is an advisory opinion, which is barred by the separation of powers provision of the Texas Constitution.

*Id.* at 163-64 (citations omitted). The court held that because there were no "plaintiffs" from the two remaining subdivisions, there was no person in those sections for whom rights could be declared

13

in the declaratory judgment action. *Id.* at 164. Consequently, "the trial court was without jurisdiction to issue a judgment" with respect to those subdivisions, and any opinion interpreting their rights would be purely advisory. *Id.* Applying the supreme court's reasoning in *Brooks*, the trial court in the present case properly concluded that it did not have jurisdiction to declare the rights of US Bancorp, an entity that was not a party to the proceeding.

AZR further contends that, in the event the trial court lacked jurisdiction to declare US Bancorp's rights, the proper remedy was to afford it the opportunity to join the missing party, not to dismiss the request for lack of jurisdiction. However, AZR had no basis for bringing US Bancorp into the suit—any existing dispute or controversy pertaining to the priority of liens in the property is between the Landlord and US Bancorp. The trial court is only required to order that a third party be made a party to the suit if, without its presence, "complete relief cannot be accorded *among those already parties.*" Tex. R. Civ. P. 39(a) (emphasis added). Here, the court was able to adjudicate the issues between the Landlord and Zurita without determining the rights of US Bancorp vis-à-vis the Landlord. US Bancorp declined to intervene in the lawsuit or otherwise seek an adjudication of its rights in the collateral in this proceeding. Moreover, AZR never sought to have US Bancorp intervene or somehow joined in the litigation at any time prior to or during trial, and never sought a continuance for that purpose. *See id.* ("If [a party] should join as plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff."). We overrule the second appellate issue.

14

*Award of attorneys' fees to the Landlord*

The trial court's judgment awards the Landlord $85,000 for reasonable and necessary attorneys' fees for trial. The judgment also awards the Landlord $20,000 in attorneys' fees in the event of an unsuccessful appeal by Zurita or AZR to the court of appeals and an additional $10,000 in the event of an unsuccessful appeal by Zurita or AZR to the Texas Supreme Court. The judgment provides that Zurita and AZR are jointly and severally liable to the Landlord for all attorneys' fees. The third appellate issue raises various challenges to the attorneys' fee award.[3]

Zurita and AZR contend that the trial court erred when it ordered AZR to pay the Landlord attorneys' fees pursuant to section 37.009 of the Uniform Declaratory Judgments Act (UDJA). We review an award of attorneys' fees under the UDJA for abuse of discretion. *See Bocquet v. Herring*, 972 S.W.2d 18, 20-21 (Tex. 1998). Appellants argue that, although the Landlord's pleadings requested an award of attorneys' fees, it did not specifically request attorneys' fees pursuant to the UDJA, and consequently the trial court's award of attorneys' fees is an abuse of discretion.

Section 37.009 of the UDJA provides: "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). In a declaratory judgment action, the trial court may award *either side* costs and reasonable attorneys' fees as are equitable and just. *See Arthur M.*

---

[3] As an initial matter, Zurita and AZR state that in the event this Court sustains the second appellate issue and holds that the trial court erred in concluding that it lacked subject matter jurisdiction over the request for declaratory relief, the attorneys' fee award should be reversed and the cause remanded to allow the trial court to reassess fees. Our disposition of the second issue moots this request.

15

*Deck & Assocs. v. Crispin*, 888 S.W.2d 56, 62 (Tex. App.—Houston [1st Dist.] 1994, writ denied). The question, then, is not whether the Landlord's pleadings include a specific request for attorneys' fees under the UDJA, but whether the action between AZR and the Landlord was one "under this chapter," i.e., whether it was a declaratory judgment action. It is undisputed that AZR sought declaratory relief against the Landlord under the UDJA. Thus, the trial court was authorized to award attorneys' fees to any party with pleadings requesting them. *See Purvis Oil Corp. v. Hillin*, 890 S.W.2d 931, 939 (Tex. App.—El Paso 1994, no writ) (concluding that party moving for attorneys' fees in declaratory judgment action need not specify statutory authority for award so long as that party has pleaded for attorneys' fees).

Zurita and AZR next contend that the Landlord was not entitled to an award of attorneys' fees under the UDJA because "the trial court found it lacked jurisdiction to consider the request for declaratory relief." AZR asserts that because there was no adjudication on the merits of the claim, no party prevailed and an award of any attorneys' fees under those circumstances is not equitable and just. While the requirements that fees be reasonable and necessary are matters of fact, the requirements that fees be equitable and just are matters of law. *See Bocquet*, 972 S.W.2d at 21. In a declaratory judgment action, the decision to award attorneys' fees is solely within the discretion of the trial court. *See Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex. 2005). Under section 37.009, a trial court may exercise its discretion to award attorneys' fees to the prevailing party, the nonprevailing party, or neither. *See Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637-38 (Tex. 1996) (award of attorneys' fees in declaratory judgment action is not dependent on finding that party "substantially prevailed").

16

Moreover, the statute does not require a judgment on the merits of the dispute as a prerequisite to a fee award. *See Castro v. McNabb*, 319 S.W.3d 721, 735 (Tex. App.—El Paso 2009, no pet.). AZR invoked the UDJA when it sought declaratory relief. The trial court's conclusion that it lacked jurisdiction to render the requested declarations did not change the nature of the proceeding. Because this was a proceeding under the UDJA, the trial court did not abuse its discretion by awarding the Landlord attorneys' fees pursuant to section 37.009.

Zurita and AZR also argue that the attorneys' fee award should be reversed because the Landlord failed to segregate the fees incurred in connection with the UDJA claim filed by AZR from the fees incurred in prosecuting its affirmative claim for breach of contract against Zurita. We understand Zurita and AZR's brief to complain about both (1) the Landlord's failure to segregate its fees between the UDJA claims and its claims for affirmative relief and (2) the trial court's failure to segregate the fees awarded between Zurita and AZR, instead making them jointly and severally liable for the entire fee award. With regard to the Landlord's failure to segregate fees between the breach-of-contract claim and the claims under the UDJA, we note that fee claimants are required to segregate fees incurred in connection with claims for which fees are recoverable from fees incurred in connection with claims for which they are not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). Segregation is required because trial courts lack the inherent authority to require a losing party to pay the prevailing party's fees, and may only award fees if authorized by contract or statute. *Id.* In this case, however, the Landlord was authorized by statute to recover attorneys' fees incurred in connection with both the breach of contract claim and the UDJA claim. Consequently, it was not required to segregate its fees.

17

Regarding the complaint that the trial court erred by not dividing the fee award between Zurita and AZR, this contention is directly contradicted by, and inconsonant with, their own trial testimony. When presenting evidence in support of Zurita and AZR's request for their attorneys' fees, their counsel testified that: "[T]his is the type of case where the parties are so inextricably intertwined, that it would be virtually impossible to segregate the attorneys' fees as between the various parties." Having testified at trial that it was impossible to segregate the fees between the parties, Zurita and AZR are estopped from now complaining on appeal that the trial court failed to do so. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (party estopped from taking position on appeal clearly adverse to position it took unequivocally at trial). Moreover, even if this was error, it was invited by Zurita and AZR's counsel. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) (party cannot complain on appeal that trial court took specific action that complaining party requested).

Zurita and AZR next assert that there is insufficient evidence that the amount of attorneys' fees for which they were held jointly and severally liable is reasonable. However, during the presentation of evidence at trial supporting the Landlord's claim for attorneys' fees, counsel for Zurita and AZR stated: "Your Honor, I don't object to the reasonableness of [the Landlord's] attorneys' fees." Consequently, appellants have also waived any complaint regarding the reasonableness of the fee award.

In a final complaint about attorneys' fees, Zurita and AZR challenge the trial court's judgment awarding appellate attorneys' fees jointly and severally against them. As written, the judgment makes both AZR and Zurita liable for the Landlord's appellate attorneys' fees even if only

18

one of them pursues the unsuccessful appeal.  This was error.  While our disposition moots the complaint with respect to the appellate attorneys' fees awarded to the Landlord in connection with the appeal to this Court, we modify the judgment to reflect that the contingent award of $10,000 in attorneys' fees to the Landlord in the event of an unsuccessful appeal to the Texas Supreme Court applies only against the party or parties that actually participate in such appeal, if any.

### *Failure to award attorneys' fees to Zurita*

The trial court reduced its award of actual damages to the Landlord by $25,000 based on its finding that the Landlord failed to properly conduct the foreclosure sale.  In their third appellate issue, Zurita and AZR contend that this reduction in the amount awarded implies that the trial court found that the Landlord either breached the lease agreement or breached sections 9.610 and 9.611 of the business and commerce code.  *See* Tex. Bus. & Com. Code Ann. §§ 9.601, .611. Appellants assert that such an implied finding supports an award of attorneys' fees to Zurita "based on its [sic] successful breach claim and UCC violation claim."  Appellants fail to identify which provision of the lease it contends the Landlord breached or explain how the Landlord's failure to conduct the foreclosure sale in compliance with the UCC constitutes breach of the lease agreement, nor did they advance any breach-of-contract claims at trial.  Moreover, appellants do not identify any statutory provision that would entitle Zurita to an award of attorneys' fees for the Landlord's failure to conduct the foreclosure sale in compliance with Article 9.  *Cf. id.* § 9.625 (setting forth remedies for secured party's failure to comply with chapter nine, including damages in amount of any loss caused by such failure but not providing for award of attorneys' fees).  Assuming that the trial court made the implied finding that Zurita and AZR rely on, such finding does not provide a basis for

19

awarding them attorneys' fees. With the exception of the modification to the award of appellate attorneys' fees noted above, we overrule the third appellate issue.

### *Were Zurita and AZR denied a fair trial?*

In their fourth issue, Zurita and AZR assert that several of the trial court's rulings were arbitrary and capricious and consequently, they were denied a fair trial. Specifically, Zurita and AZR complain that the trial court's denial of two motions for continuance and its refusal to give them additional time during trial to present more evidence, considered independently or cumulatively, constitute reversible error requiring remand.

On January 29, 2010, Zurita and AZR filed a motion to continue the February 16, 2010 trial setting. The case had been set for a nonjury trial on that date since the trial court's entry of a scheduling order in October 2009. As one of the grounds for the requested continuance, Zurita and AZR asserted that, due to accident and mistake, they had failed to make a timely jury demand. They argued that the trial court should grant a continuance in order to allow them to try their case before a jury. Zurita and AZR also asserted that they needed additional time to conduct discovery regarding the Landlord's alleged failure to mitigate damages. Zurita and AZR claimed to have recently been provided the names of individuals who presented the Landlord with letters of intent regarding the leased premises; they requested a continuance in order to conduct discovery as to those individuals. However, Zurita and AZR also conceded that the names were provided by the Landlord in response to interrogatories that had not been propounded until thirty-four days before the expiration of the discovery period for a case that had been on file for over a year.

20

We review a trial court's denial of a motion for continuance for an abuse of discretion. *BMC Software Belg., N.V.*, 83 S.W.3d at 800. A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* If a continuance is sought in order to pursue further discovery, the movant must describe the evidence sought, explain its materiality, and show that the party requesting the continuance has used due diligence to obtain the evidence. *Wal-Mart Stores Tex., LP v. Crosby*, 295 S.W.3d 346, 356 (Tex. App.—Dallas 2009, pet. denied). The record does not affirmatively show the diligence necessary for Zurita and AZR to have obtained a continuance to conduct additional discovery. *See State v. Wood Oil Distrib.*, 751 S.W.2d 863, 865 (Tex. 1988) (failure of litigant to utilize rules of civil procedure for discovery purposes will not authorize granting of continuance). Moreover, the trial court did not abuse its discretion in refusing to continue the trial in order to permit counsel for Zurita and AZR to obtain a jury trial when they failed to timely request one and did not object to the nonjury trial setting entered by the court as part of its scheduling order.

At trial, Zurita and AZR orally reurged their motion for continuance, essentially arguing that the continuance was required so that they could obtain testimony from witnesses regarding the Landlord's alleged failure to mitigate damages. Texas Rule of Civil Procedure 252 provides that if the ground for a continuance is lack of testimony, the party seeking the continuance must provide an affidavit stating that the testimony is material, that he used due diligence to procure the testimony, and that such testimony cannot be procured from any other source. *See* Tex. R. Civ. P. 252. Rule 252 further provides that if the motion for continuance is sought due to the absence of a witness, the movant must provide an affidavit stating the name and address of the witness, what

21

he expects the witness's testimony to prove, and that the continuance is not sought for delay but so justice may be done. *See id.* A trial court does not abuse its discretion when it denies a motion for continuance that does not meet those requirements. *See Pape v. Guadalupe-Blanco River Auth.*, 48 S.W.3d 908, 914 (Tex. App.—Austin 2001, pet. denied) (citing Tex. R. Civ. P. 252). Zurita and AZR's oral motion for a continuance at trial did not comply with the requirements of rule 252. Accordingly, we conclude that the trial court did not abuse its discretion by denying Zurita and AZR's motion for continuance.

Zurita and AZR also complain that the trial court erred in limiting the time they had to present their case. On the first day of trial, the court asked the parties how much time they needed, and counsel for Zurita and AZR expressed no objection to the statement by counsel for the Landlord that the case would take two and a half days. At the end of the second day that the trial court heard evidence, and again at the beginning and the end of the third day on which the court heard evidence, the trial court discussed the time limits for the parties to present their respective cases. The trial court repeatedly provided the parties with a summary of the time each had used and how much time remained. Zurita and AZR did not object or inform the court that they needed more time. Counsel for Zurita and AZR only complained about the time limit when there was one hour remaining of the allotted time for their evidence. Counsel again asked for a continuance, which the trial court denied, explaining that Zurita and AZR were aware of the time limits and had never objected to them.

To preserve error for appeal, Zurita and AZR were required to make a timely, specific objection to the time limit at the earliest possible opportunity. *See Schwartz v. Forest Pharms., Inc.*, 127 S.W.3d 118, 126-27 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing Tex. R. App.

22

P. 33.1). Zurita and AZR failed to object to the initial imposition of the time limit. In addition, they subsequently failed to object when the trial court repeatedly reminded them of the time limit and advised them of their remaining time. Instead, they made no objection until the court gave its final reminder on the last day of trial. By failing to make a timely objection, they waived any complaint that the trial court erred by imposing and enforcing the time limit. *See id.*

Zurita and AZR have failed to show that the trial court's rulings, considered individually or cumulatively, denied them a fair trial. Having concluded that the trial court did not abuse its discretion in denying Zurita and AZR's motion for continuance and that Zurita and AZR waived any error by the trial court in limiting the trial time to two and a half days, we overrule the fourth appellate issue.

## CONCLUSION

We modify the trial court's judgment to reflect that the contingent award of $10,000 in attorneys' fees to the Landlord in the event of an unsuccessful appeal to the Texas Supreme Court is rendered only against the party or parties that actually participate in any such appeal. As modified, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Goodwin

Modified and, as Modified, Affirmed

Filed: December 8, 2011

23